[No. 7738. Decided March 27, 1909.]

*In the Matter of the Application of* FRED MILECKE *for a Writ of Habeas Corpus.*[1]

HABEAS CORPUS — WARRANT — SUFFICIENCY — REMEDY BY APPEAL. The sufficiency of a warrant will not be inquired into upon an application for a writ of habeas corpus to release a prisoner held thereunder, the remedy being by appeal.

CONSTITUTIONAL LAW — IMPRISONMENT FOR DEBT — FRAUDULENT CONTRACTION OF BILLS—INNKEEPERS—STATUTE—CONSTRUCTION. Laws 1903, p. 244, making it a misdemeanor punishable by imprisonment for any person to fraudulently incur an innkeepers', boarding or lodging house bill or secure accomodations by false pretenses without paying for the same, or to surreptitiously remove baggage without such payment, does not violate Const., art. 1, § 17, prohibiting imprisonment for debt except in the case of absconding debtors; since the imprisonment is for the fraud committed.

CONSTITUTIONAL LAW—IMPRISONMENT FOR DEBT. "Debt" within the meaning of the constitutional provision that there shall be no imprisonment for debt refers to contract obligations and not to obligations arising from fraud or in tort.

[1]Reported in 100 Pac. 743.

CONSTITUTIONAL LAW—ENCROACHMENT ON JUDICIARY — RULE OF
EVIDENCE. Laws 1903, p. 244, § 2, providing that refusing or neg-
lecting to pay a bill, or surreptitiously removing baggage, shall be
*prima facie* evidence of intent to defraud in contracting an inn-
keeper's bill, is not unconstitutional; as the legislature may pre-
scribe the *quantum* and order of proof.

Appeal from a judgment of the superior court for Spokane
county, Kennan, J., entered July 29, 1908, denying an ap-
plication for a writ of *habeas corpus* for the release of a
prisoner. Affirmed.

*Swanson & Ripley*, for appellant.

*R. M. Barnhart* and *Donald F. Kizer*, for respondent.

CHADWICK, J.—The petitioner was arrested and charged,
in the police court of the city of Spokane, with having violat-
ed the provisions of chapter 131, Laws 1903, p. 244, en-
titled: "An act for the protection of hotel, boarding house,
restaurant, and lodging house keepers, and providing a pen-
alty." Upon conviction he applied for a writ of *habeas
corpus* in the superior court of Spokane county. This ap-
peal is prosecuted from an order denying the writ.

Error is assigned in that the statute is unconstitutional
and the conviction was unwarranted, and for the reason that
the warrant did not state facts sufficient to justify the ar-
rest of appellant. Before addressing ourselves to the first and
more important assignment, we will dispose of the objection
to the sufficiency of the warrant. This court has repeatedly
held that the sufficiency of a warrant issued by a court of
competent jurisdiction will not be inquired into upon an ap-
plication for a writ of *habeas corpus*. The remedy of peti-
tioner is by an appeal from the final judgment, and is ample
for his protection. *In re Casey*, 27 Wash. 686, 68 Pac. 185;
*In re Barbee*, 19 Wash. 306, 53 Pac. 155; *In re Nolan*, 21
Wash. 395, 58 Pac. 222. To the same effect: *State ex rel.
Miller v. Superior Court*, 40 Wash. 555, 82 Pac. 875, 111
Am. St. 925, 2 L. R. A. (N. S.) 395; *State ex rel. Martin v.*

*Hinkle*, 47 Wash. 156, 91 Pac. 640; *State ex rel. McCalley v. Superior Court*, 51 Wash. 572, 99 Pac. 740.

The only question . open for our consideration is the constitutionality of the law. That part of the act upon which the conviction of appellant must depend is as follows:

"A person who obtains any food, lodging or accommodation at a hotel, boarding house, restaurant, or lodging house, without paying therefor, or with intent to defraud the proprietor or manager thereof, or who obtains credit at a hotel, boarding house, or lodging house by the use of false pretense, or who after obtaining board, lodging or accommodations at a hotel, boarding house, restaurant, or lodging house, absconds or surreptitiously removes his baggage therefrom without paying for his food, lodging or accommodation, is guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not less than ten dollars nor more than fifty dollars, or imprisonment in the county jail not less than ten nor more than thirty days." Laws 1903, page 244, § 1.

It is urged that, under the guise of a penal statute, it provides for imprisonment for debt, in contravention of § 17, art. 1, of the constitution, and that it grants privileges to a class which upon the same terms do not belong to all citizens, in violation of § 12, art. 1. Similar statutes have been construed by the courts of several of the states: *Ex parte King*, 102 Ala. 182, 15 South. 524; *Chauncey v. State*, 130 Ala. 71, 30 South. 403, 89 Am. St. 71; *State v. Yardley*, 95 Tenn. 546, 32 S. W. 481, 34 L. R. A. 656; *Hutchinson v. Davis*, 58 Ill. App. 358; *State v. Benson*, 28 Minn. 424, 10 N. W. 471; *State v. Engle*, 156 Ind. 339, 58 N. E. 698.

Counsel insists, however, that the constitutional provisions in all the states passing upon this question, with the exception of Alabama, differ from our own, in that they provide that the legislature shall make no law authorizing imprisonment for debt in civil cases except in a case of fraud; whereas the constitution of this state makes no mention of the word "fraud," but limits the power of the legislature to providing for the imprisonment of absconding debtors. It is insisted

that under the one form of expression, imprisonment may be
authorized if there be fraud in the inception of the debt; in
the other (Washington) it can only be authorized in the case
of an absconding debtor. Imprisonment for debt is abhor-
rent to the spirit of free government, and is not to be tolerated
under the form of penal statutes. That no man shall oppress
his debtor or restrain him of his liberty has come to be a fixed
principle, cherished by the people, and so guarded by con-
stitutional provisions that the legislature cannot give ear to
those who seek to use the power of the state to coerce the pay-
ment of their debts. Did we believe the statute under con-
sideration was thus offensive, we would declare it unconstitu-
tional without hesitation. But the solemn enactments of the
legislative body are not to be ruthlessly stricken down. It is
the duty of the court to sustain them if possible. It is only
when they are clearly in opposition to the fundamental law
that the judgment of the court will intervene, and not then
to nullify a law that seems unjust, but rather to preserve the
declaration of right reserved and made immune from legis-
lative interference by the people themselves. We cannot read
the statute as does counsel for appellant. It does not in
our judgment warrant imprisonment for a debt. It would
be beyond our province to hold that a person could be im-
prisoned for a simple contract debt; or, to put it in the way
of counsel for appellant, simply because he did not pay his
hotel bill. The hotel keeper, if he should undertake to use
the law as a whip to compel the payment of an overdue ac-
count honestly contracted, would himself be subjected to
the penalties of the law, and become liable for damages in a
civil action. The law under consideration goes no further
than to say that the fraudulent incurring of a debt is a
crime. Appellant has obtained a thing of value with intent
to defraud. He is liable, as much so as is the one who by
fraudulent pretense obtains the goods of a merchant or the
money of a banker.

The use of the word "debt" in the discussion of this kind

of legislation has unfortunately raised an issue of law that is unwarranted. The fault of counsel's reasoning is in assuming that, because the fraud of the appellant resulted in a debt, he can find protection under § 17, art. 1, of the constitution. In construing this provision the word "debt" is confined to an obligation arising out of a contract, express or implied. It is never extended to cover a tort.

"A person who wilfully injures another in person, property, or character, is liable therefor in damages. In some sense he may be called the debtor of the party injured, and the sum due for the injury a debt. But he is in fact a wrongdoer, a trespasser, and does not come within the reason of the rule which exempts an honest man from imprisonment, because he is pecuniarily unable to pay what he promised to. For instance, a person who wrongfully beats his neighbor, kills his ox, or girdles his fruit trees ought not to be considered in the same category as an unfortunate debtor. He ought to be liable to arrest in action for damages by the party injured. Deny him this remedy, and in the majority of such cases it would amount to a denial of justice, and a deliberate repudiation and disregard of the injunction contained in section 10 of the same article—'every man shall have remedy by due course of law for injury done him in person, property or reputation.' It may be admitted that a penalty given by statute is technically a debt. It does not, however, arise upon contract, but by operation of law. It is imposed as a quasi punishment for the violation of law or the neglect or refusal to perform some duty to the public or individuals enjoined by law. Penalties are imposed in furtherance of some public policy, and as a means of securing obedience to law. Persons who incur them are either in morals or law, wrong-doers, and not simply unfortunate debtors unable to perform their pecuniary obligations. I do not think the constitutional provision prohibiting imprisonment for debt was intended to apply to or include such cases." *United States v. Walsh*, 1 Deady (U. S.) 281.

See, also, *Lee v. State*, 75 Ala. 29; *Ex parte Hardy*, 68 Ala. 303; *United States v. Walsh*, 1 Abb. (U. S.) 66, 71; *Bray v. State*, 140 Ala. 172, 37 South. 250.

The principle underlying this class of enactments is so

thoroughly reasoned in the case of *State v. Yardley, supra,* that we feel warranted in adopting the expressions of that court as our own:

"The offense consists, not in the creation of a debt, nor in its nonpayment, but rather in the fraud through which credit may be procured or payment evaded. The latter, and not the former, is the thing for which punishment is to be inflicted. As well said by one of the attorneys for the state, the legislative intent was 'to punish the debtor for his fraud, and not for his debt.' Honest debtors are not within the act. It relates to those alone who shall intentionally pursue a certain course of fraudulent conduct; and that course of fraudulent conduct, intentionally pursued, constitutes the offense for which punishment is prescribed, and without which punishment will not be inflicted. Without intentional fraud no offense is committed, no penalty incurred. The intention of the legislature, as we get it from the words and the tenor of the act, was to authorize punishment, including imprisonment, not for debt, but alone for particular intentional frauds, whereby the offender may obtain the property of his victim,  .  .  . for temporary use in case of lodging, and for absolute consumption in case of food, without compensation; or whereby, after obtaining such accommodations, he would defeat the landlord's lien upon his baggage. To our minds, this is not only a fair and reasonable construction of the act, but the most easy and natural one that can be given the language employed. The manifest object was to protect the property and the lien of the landlord against those persons who would, by intentional fraud, wrongfully use or consume the one or defeat the other; and, to make that protection effectual, the offender is subjected to punishment for his fraud, whether practiced in the wrongful use or consumption of the landlord's property or in the removal of his own property upon which the landlord has a lien. In either case the landlord has an interest in property, which the state, as a matter of public policy or of individual right, may well protect by the passage and enforcement of a penal statute such as that before us."

Nor do we think that that part of § 2 of the act, providing that if it be shown that a party has refused or neglected to pay for his accommodations, or has removed or

surreptitiously attempts to remove, his baggage, such showing shall be *prima facie* evidence of guilt, does violence to any constitutional provision. It is elementary that, when a crime is defined, the legislature may provide the quantum as well as the order of proof. It is not going beyond sound reason to say that, when a person asks for and receives accommodations at a hotel for which he does not pay, or if he undertakes to destroy the innkeeper's lien on his baggage, he should assume the burden of showing an honest intent. We are not without precedent to sustain us on this point. It is like unto the statute (Bal. Code, § 7105; P. C. § 1607) that puts upon one who is charged with an unlawful entry or an unlawful breaking and entry, the burden of explaining his conduct to the satisfaction of a jury, or suffering the presumption that his entry was actuated by a burglarious intent. In the case at bar appellant has at least done a wrong, and the reasoning employed in the case of *State v. Anderson,* 5 Wash. 350, 31 Pac. 969, is pertinent:

"The presumption provided for is not a conclusive one, and even without the aid of such legislation the jury would be justified in finding a criminal intent from the fact of the unlawful entry, if under all the circumstances surrounding the case such a presumption would be a reasonable one. It is the constitutional right of defendant to demand proof of his guilt before he shall be convicted of a crime, but it does not follow from such fact that it is beyond the power of the legislature to provide that a certain presumption may follow from the establishment of a fact, from which such presumption may follow as a reasonable conclusion."

See, also, *State v. Kyle,* 14 Wash. 550, 45 Pac. 147; *State v. Eubank,* 33 Wash. 293, 74 Pac. 378; *State v. Lawson,* 40 Wash. 455, 82 Pac. 750.

The point made by appellant, that the act creates special privileges, is not discussed in his brief, nor do we find any merit in it.

The judgment of the lower court is affirmed.

RUDKIN, C. J., FULLERTON, GOSE, DUNBAR, MOUNT, and CROW, JJ., concur.