# FREEMAN *v.* UNITED STATES.

ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 156.    Submitted April 11, 1910.—Decided May 16, 1910.

Provisions carried into the Philippine bill of rights by the statute of July 1, 1902, c. 1369, 32 Stat. 691; such as "that no person shall be imprisoned for debt," are to be interpreted and enforced according to their well-known meaning at the time. *Kepner v. United States*, 195 U. S. 100.

Statutes relieving from imprisonment for debt, as generally interpreted, relate to commitment of debtors for liability on contracts, and not to enforcement of penal statutes providing for payment of money

as a penalty for commission of an offense and the provision against imprisonment for debt in the Philippine bill of rights as contained in § 5 of the act of July 1, 1902, c. 1369, 32 Stat. 691.

The fact that a money penalty imposed for embezzlement goes to the creditor and not into the public treasury does not make imprisonment for non-payment of the penalty imprisonment for debt; and so held as to § 5, Art. 535, of the Penal Code of the Philippine Islands.

Where the statute provides a penalty for embezzlement to the amount proved, to go to the creditor, and a subsidiary sentence of imprisonment in case of non-payment, the court may, without violating fundamental principles of justice, find the amount wrongfully converted for the purpose of fixing sentence in the criminal action, leaving the creditor his remedy in a civil action for any excess due him over the amount of the sentence; and so held as to a conviction for embezzlement under Article 535 of the Penal Code of the Philippine Islands.

THE facts, which involve the validity of a conviction for embezzlement under § 535 of the Philippine Code, are stated in the opinion.

Mr. *Aldis B. Browne,* Mr. *W. A. Kincaid,* Mr. *Alexander Britton* and Mr. *Evans Browne* for plaintiff in error.

Mr. *Assistant Attorney General Fowler* for the United States.

MR. JUSTICE DAY delivered the opinion of the court.

This is a writ of error to the Supreme Court of the Philippine Islands, seeking to reverse a judgment of that court affirming a conviction of the plaintiff in error of the crime of *estafa* (embezzlement) growing out of the alleged misappropriation of some 3,500 pesos received by him as manager of the steamship department of Castle Brothers, Wolf & Sons. The sentence of the court of first instance was as follows:

"The court therefore finds the defendant, Otis G. Freeman, guilty of embezzlement of the sum of p3,500 Phil-

ippines currency, as charged in the complaint, the property of Castle Bros., Wolf & Sons, and does sentence him to imprisonment, *presidio correccional*, in the insular prison of Bilibid, for the period of one year and nine months, and to restore to said Castle Bros., Wolf & Sons the sum of p3,500 Philippines currency, or in lieu thereof to suffer subsidiary imprisonment for the period of seven months and to pay the costs of prosecution."

Upon appeal to the Supreme Court of the Philippine Islands that court, after reviewing the testimony, said:

"This finding, of course, will in no way estop the said firm of Castle Bros., Wolf & Sons from recovering in a civil action from the defendant any sum or sums in excess of this amount which are found to be due to the said firm. The only charge (change) which this finding makes in the conclusion of the lower court is in the amount of money which must be returned to the firm of Castle Bros., Wolf & Sons by virtue of this sentence.

"It is the judgment of this court that the sentence of the lower court be affirmed with this modification, and that the defendant be sentenced to be imprisoned for a period of one year and nine months of *presidio correccional*, and to restore to Castle Bros., Wolf & Sons the sum of p2,078.50, or in lieu thereof to suffer subsidiary imprisonment for a period not to exceed one-third of the principal penalty, and to pay the costs."

The statute of the Philippine Islands defining the crime is article 535 of the Philippine Code:

"(1) Philippine Penal Code, article 535:

" 'The following shall incur the penalties of the preceding articles:

     *      *      *      *      *      *      *      *

" '5. Those who, to the prejudice of another, shall appropriate or misapply any money, goods, or any kind of personal property which they may have received as a deposit on commission for administration or in any other

character producing the obligation to deliver or return the same, or who shall deny having received it.' "

Other pertinent articles of the Philippine Code are as follows:

"(2) Philippine Penal Code, article 534:

" 'A person who shall defraud another in the substance, quantity, or quality of things he may deliver to him, by virtue of an obligation, shall be punished—

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

" '2. With that (the penalty) of *arresto mayor* in its medium degree to *presidio correccional* in its minimum degree if it should exceed 250 pesetas and not be more than 6,250 pesetas.'

"(3) Philippine Penal Code, article 28:

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

" 'Those [penalties] of *presidio correccional* and *prision correccional* shall last from six months and one day to six years.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

" 'That of *arresto mayor* shall last from one month and one day to six months.'

"(4) Philippine Penal Code, article 49:

" 'In case the property of the person punished should not be sufficient to cover all the pecuniary liabilities they shall be satisfied in the following order:

" '1. Reparation of the injury caused and indemnification of damages.

" '2. Indemnification to the State for the amount of stamped paper and other expenses which may have been incurred on his account in the cause.

" '3. The costs of the private accuser.

" '4. Other costs of procedure, including those of the defense of the person prosecuted, without preference among the persons interested.

" '5. The fine.

" 'Should the crime have been of those which can be

prosecuted only at the instance of a party, the cost of the private accuser shall be satisfied in preference to the indemnification to the State.'

"(5) Philippine Penal Code, article 50:

" 'If the person sentenced should not have property to satisfy the pecuniary liabilities included in Nos. 1, 3 and 5 of the preceding article, he shall be subject to a subsidiary personal liability at the rate of one day for every 12½ pesetas, according to the following rule:

" '1. If the principal penalty imposed is to be undergone by the criminal confined in a penal institution, he shall continue therein, although said detention cannot exceed one-third of the term of the sentence, and in no case can it exceed one year.

\*    \*    \*    \*    \*    \*    \*    \*

" '(6) Philippine Penal Code, article 52:

" 'The personal liability which the criminal may have incurred by reason of insolvency shall not exempt him from the reparation of the injury caused and the indemnification of damages if his pecuniary circumstances should improve; but it shall exempt him from the other pecuniary liabilities included in Nos. 3 and 5 of article 49.' "

It is the contention of the plaintiff in error that the judgment of the Supreme Court of the Philippine Islands should be reversed for two reasons, first, because the judgment was in substance and effect an imprisonment for debt; second, because the court should have dismissed the case without prejudice to the right to institute a civil action for the rendition of accounts.

As to the first contention, that the judgment and sentence amounted to imprisonment for debt:—The act of July 1, 1902, providing for the administration of the affairs of the civil government of the Philippine Islands, 32 Stat. 691, provides among other things in § 5 thereof: "That no person shall be imprisoned for debt." This provision was carried to the Philippine Islands in the

statute quoted with a well-known meaning, as under-
stood when thus adopted into the bill of rights for the
government of the Philippines and must be so interpreted
and enforced. *Kepner* v. *United States*, 195 U. S. 100,
124.

Statutes relieving from imprisonment for debt were
not intended to take away the right to enforce criminal
statutes and punish wrongful embezzlements or con-
versions of money. It was not the purpose of this class
of legislation to interfere with the enforcement of such
penal statutes, although it provides for the payment of
money as a penalty for the commission of an offense.
Such laws are rather intended to prevent the commit-
ment of debtors to prison for liabilities arising upon their
contracts. *McCool* v. *State*, 23 Indiana, 129; *Musser* v.
*Stewart*, 21 Oh. St. 353; *Ex parte Cottrell*, 13 Nebraska, 193;
*In re Ebenhack*, 17 Kansas, 618, 622.

This general principle does not seem to be controverted
by the learned counsel for the plaintiff in error, and the
argument is, that inasmuch as the money adjudged is to
go to the creditor, and not into the public treasury, im-
prisonment for the non-payment of such sum is an im-
prisonment for debt. But we think that an examination
of the statutes of the Philippines and the judgment of the
Supreme Court shows that the imposition of the money
penalty was by way of punishment for the offense com-
mitted, and not a requirement to satisfy a debt con-
tractual in its nature or be imprisoned in default of pay-
ment.

Section 5, article 535, of the Penal Code provides that
those who, to the prejudice of another, shall appropriate
or misapply any money, goods or any kind of personal
property which they may have received as a deposit on
commission for administration, or in any other character,
producing the obligation to deliver or return the same, or
who shall deny having received it, shall incur certain

penalties. As a further means of punishing the act done in violation of the statute he may, under the Philippine Code, be made to suffer a subsidiary imprisonment for a term not to exceed one-third of the principal penalty in lieu of the restoration of the sum found to be embezzled. The sentence of the Supreme Court of the Philippine Islands, including the imprisonment in lieu of the payment of the sum found due, was because of the conviction for the violation of this statute—in other words, the money payment was part of the punishment and was not imposed as an imprisonment for non-payment of the debt, regardless of the criminal offense committed. The sentence and each part of it was imposed because of the conviction of the defendant of the criminal offense charged.

This situation is not changed because the sentence provides for a release from the subsidiary imprisonment upon payment of the money wrongfully converted. The sentence imposed, nevertheless, includes the requirement to pay money because of the conviction of the offense. The requirement that there shall be no imprisonment for debt was intended to prevent the resort to that remedy for the collection of contract debts, and not to prevent the State from imposing a sentence for crime which should require the restoration of the sum of money wrongfully converted in violation of a criminal statute. The non-payment of the money is a condition upon which the punishment is imposed. *State of Maryland v. Nicholson,* 67 Maryland, 1.

We do not think that the sentence and judgment violated the statute providing that no person shall be imprisoned for debt.

As to the second objection, that the court should have dismissed the cause without prejudice to the right of instituting a civil action, the argument seems to be that this should be so because the payment of the money adjudged or suffering the "subsidiary imprisonment" im-

posed would not, as the Supreme Court adjudged, bar the creditor from a civil action to recover any sum which he might prove to be due in excess of the judgment rendered in the present case. "In other words," says the learned counsel, "imprisonment will satisfy (and therefore discharge) the judgment here rendered, leaving another and wholly civil action open to the complainants to recover any additional sum arising out of the same cause of action." This possibility is said to be so wholly unjust that it ought not to be permitted to exist in any country subject to American jurisdiction. But we fail to appreciate the weight of this argument. We see no reason why the court may not, for the purpose of the criminal proceedings, find the amount wrongfully converted by the defendant for the purpose of fixing the sentence in this case, leaving the firm defrauded to recover in a civil action any sum or sums in excess of that amount which may be found due and remain unpaid to them. We are unable to perceive in this action such violation of the fundamental principles of justice as required the dismissal of the criminal action, leaving the parties complaining to the remedies of a civil suit.

We find no error in the judgment of the court below, and the same is affirmed.

*Affirmed.*