[No. 7468-4-III.   Division Three.   March 12, 1987.]

THE STATE OF WASHINGTON, *Appellant,* v. LARRY H. ENLOE, *Respondent.*

*Paul Klasen, Prosecuting Attorney,* and *Stephen J. Hallstrom* and *Mary Ann Brady, Deputies,* for appellant.

*Chelsea C. Korte* and *Cone, Gilreath & Korte,* for respondent.

McINTURFF, C.J.—The State appeals the Superior Court's dismissal on constitutional grounds of the information filed against Larry H. Enloe, charging him with failure to pay for agricultural products under RCW 20.01.460-(2)(d). We affirm, finding the statute violates the constitutional prohibition against imprisonment for debt, and therefore is unconstitutional on its face.

Mr. Enloe was charged with a violation of RCW 20.01-.460(2)(d), failure to pay for agricultural products. The information stated the violation was committed when Mr. Enloe

> intentionally fail[ed] to pay Earl Monroe for agricultural products purchased on or about the 26th and 28th days of June, 1984 and the 1st day of July, 1984, valued at more than two hundred fifty dollars, within the time and manner required by Title 20, RCW;

> (Penalty: 5 years/10,000).

No facts on the particularities of the transaction are contained in the record.

Mr. Enloe moved to dismiss, claiming the information failed to state a crime, or in the alternative, that the crime stated was contrary to Const. art. 1, § 17 because the statute provided a criminal sanction for a civil debt. The Superior Court found the statute was unconstitutional on its face and dismissed the charges against Mr. Enloe.

The only issue is whether RCW 20.01.460(2)(d), which provides for *criminal sanctions,* is unconstitutional under Const. art. 1, § 17, which prohibits imprisonment for debt. Mr. Enloe urges that the statute is unconstitutional on its

face because it does not require an intent to defraud, *i.e.,* a criminal intent; instead, the statute only requires proof defendant intentionally failed to pay within the stated period of time.

RCW 20.01 is entitled "Agricultural Products—Commission Merchants, Dealers, Brokers, Buyers, Agents". It provides for regulation, including licensing and inspection, of transactions in agricultural products. Former RCW 20.01-.460(2)(d) provides:

> Any commission merchant, dealer, or cash buyer, or any person assuming or attempting to act as a commission merchant, dealer, or cash buyer without a license is guilty of a class C felony who:
>
> . . .
>
> (d) Intentionally fails to pay for agricultural products valued at more than two hundred fifty dollars within the time and in the manner required by this chapter . . .

The disputed language in (d) was added in 1982. Laws of 1982, ch. 20, § 4, p. 129.

Const. art. 1, § 17 provides: "There shall be no imprisonment for debt, except in cases of absconding debtors."

The State argues this case is controlled by *Northern Cedar Co. v. French,* 131 Wash. 394, 408, 230 P. 837 (1924), *modified on other grounds,* 133 Wash. 692, 233 P. 39, *appeal dismissed,* 270 U.S. 625, 70 L. Ed. 767, 46 S. Ct. 204 (1925). *Northern Cedar Co.,* at 399, construed the predecessor to RCW 20.01.460(2)(d) and stated at pages 408–09:

> The act provides that any person "violating any provisions of this act shall be guilty of a misdemeanor." It is argued by respondent that this is in violation of our constitutional provision against imprisonment for debt, because elsewhere it is provided that the commission merchant must, within a designated time, make remittance to the producer. We agree with the trial court that there is no merit in this point.
>
> In *Clark v. State,* 171 Ind. 104, 84 N. E. 984 [(1908)] the court said:
>
> "But it is plain that this constitutional inhibition was directed against imprisonment for debt in civil actions at the instance of the creditor, with a view to coercing pay-

ment of his debt, and had no reference to such actions as might be brought by the state through its officers in the interest of good morals and honest dealing."

*The purpose of the act is not to punish for failure to comply with the obligation to pay money, but the fraudulent intention with which the money is withheld. Lamar v. State, 120 Ga. 312, 47 S. E. 958 [1904]; Freeman v. United States, 217 U. S. 539, [54 L. Ed. 874, 30 S. Ct. 592 (1910)].*

(Italics ours.)

*Northern Cedar* holds that fraudulent intent to withhold money is constitutionally required before one can be found guilty of a violation of the predecessor statute to RCW 20.01.460(2)(d). The failure to prove such intent renders the statute violative of the constitutional provision forbidding imprisonment for a debt. The court held the statute constitutional by ruling that fraudulent intent was an added element of proof under the statute. *Northern Cedar,* at 409.

In *State v. McFarland,* 60 Wash. 98, 105, 110 P. 792 (1910), a statute which provided for imprisonment for mere failure by a hotelkeeper to pay an inspection fee was found unconstitutional because it provided for imprisonment for debt:

The only alleged criminal offense, with the commission of which the appellant has been charged, is that he did not pay the inspection fee. He cannot be fined nor imprisoned for any such act, as it cannot be made a criminal offense.

The court struck down the unconstitutional provision of the statute, rather than reading "fraudulent intent" into the statute as was done in *Northern Cedar* to make the criminal penalty constitutional. *McFarland,* at 105.

In *State v. Williams,* 133 Wash. 121, 122, 233 P. 285 (1925), the court held the constitutional prohibition against imprisonment for debt did not apply to a contractor who receives the full price for a contract, but does not pay laborers and materialmen. The court found the contractors were *not* being punished for any debt which they may owe

their contractee by reasons of the receipt of the contract price, but for their fraud—for secreting or failure to pay as they should "with intent to deprive or defraud the owner thereof". *State v. Williams, supra* at 123.

There are few cases interpreting Const. art. 1, § 17. In *State v. Barklind,* 87 Wn.2d 814, 819, 557 P.2d 314 (1976), the court stated: "It is elementary that personal liberty transcends the obligation to pay a monetary sum in most circumstances." The *Barklind* court cited *In re Milecke,* 52 Wash. 312, 315, 100 P. 743 (1909), which stated:

> Imprisonment for debt is abhorrent to the spirit of free government, and is not to be tolerated under the form of penal statutes. That no man shall oppress his debtor or restrain him of his liberty has come to be a fixed principle, cherished by the people, and so guarded by constitutional provisions that the legislature cannot give ear to those who seek to use the power of the state to coerce the payment of their debts.

The court upheld a statute providing for criminal penalties for failure to pay a hotel bill by construing the statute to require fraudulent incurrence of the debt, not simple non-payment:

> It would be beyond our province to hold that a person could be imprisoned for a simple contract debt; . . . The law under consideration goes no further than to say that the fraudulent incurring of a debt is a crime. Appellant has obtained a thing of value with intent to defraud. He is liable, as much so as is the one who by fraudulent pretense obtains the goods of a merchant or the money of a banker.

*Milecke,* at 315.

We hold that in order for RCW 20.01.460(2)(d) to avoid the constitutional prohibitions against imprisonment for debt, fraudulent intent must be made an element of the crime. Failure to pay a debt, although intentional in the sense that a decision is made to use funds available for purposes other than payment of the debt, cannot be criminally punished because of the prohibition in Const. art. 1, § 17. The wording of RCW 20.01.460(2)(d), absent construing

the statute to require a showing of fraudulent intent, would permit imprisonment for such nonpayment of debt.

A statute is presumed constitutional, *State v. Maciolek*, 101 Wn.2d 259, 263, 676 P.2d 996 (1984), and if the legislative enactment is reasonably capable of a constitutional construction, it must be given that construction. *Seattle v. Drew*, 70 Wn.2d 405, 408, 423 P.2d 522, 25 A.L.R.3d 827 (1967). However, the drafting of a statute is a legislative, not a judicial, function. *State v. Martell*, 22 Wn. App. 415, 418, 591 P.2d 789 (1979). Therefore, courts will not read into a statute matters which are not there, nor modify a statute by construction. *Rhoad v. McLean Trucking Co.*, 102 Wn.2d 422, 426, 686 P.2d 483 (1984); *State v. Martell, supra* at 418. Further, courts may not read into a statute things which it conceives the Legislature has left out unintentionally. *Rhoad,* at 427.

The role of the judiciary in construction of a criminal statute is especially circumscribed. Criminal statutes involving a deprivation of liberty must be strictly construed against the State.[1] *In re Carson,* 84 Wn.2d 969, 973, 530

---

[1]As stated in 3 N. Singer, *Statutory Construction* § 59.03, at 12–13 (1986):

"'It is a well–established principle of statutory construction that penal statutes must be strictly construed in determining the liability of the person upon whom the penalty is imposed, and that the more severe the penalty, and the more disastrous the consequence to the person subjected to the provisions of the statute, the more rigid will be the construction of its provisions in favor of such person and against the enforcement of such law.' . . . *Several reasons are advanced in justification of the rule that penal statutes should be strictly construed.* These are based on a concern for the rights and freedoms of accused individuals. *Strict construction is a means of assuring fairness to persons subject to the law by requiring penal statutes to give clear and unequivocal warning in language that people generally would understand, concerning actions* [that] *would expose them to liability for penalties* and what the penalties would be. A number of courts have said: '. . . the rule that penal statutes are to be strictly construed . . . is a fundamental principle which in our judgment will never be altered. Why? Because the lawmaking body owes the duty to citizens and subjects of making unmistakably clear those acts for the commission of which the citizen may lose his life or liberty. Therefore, all the canons of interpretation which apply to civil statutes apply to criminal statutes, and in addition there exists the canon [of strict construction]. . . . The burden lies on the lawmakers, and *inasmuch as it is* within their power, it is their duty to relieve the situation of all doubts.' . . .

P.2d 331 (1975). In *State v. Shipp,* 93 Wn.2d 510, 610 P.2d 1322 (1980), the task of the court was to interpret the term "knowledge" in a criminal statute. The court, at pages 515–16, found it would be a violation of procedural due process to interpret "knowledge" to mean "negligent ignorance", stating:

> Statutes which define crimes must be strictly construed according to the *plain meaning* of their words to assure that citizens have adequate notice of the terms of the law, as required by due process. "Men of common intelligence cannot be required to guess at the meaning of the enactment." *Winters v. New York,* 333 U.S. 507, 515, 92 L. Ed. 840, 68 S. Ct. 665 (1947); *Seattle v. Pullman,* 82 Wn.2d 794, 797, 514 P.2d 1059 (1973). The word "knowledge" has an ordinary and accepted meaning. A statutory redefinition of knowledge to mean negligent ignorance would completely contradict the accepted meaning.

(Italics ours.)

Here, the ordinary meaning of "intentional" cannot be construed according to its plain meaning to mean "fraudulent intent". "Intentional" is defined as "done by intention or design". *Webster's Third New International Dictionary* 1176 (1969). Fraudulent, on the other hand, is defined as "belonging to or characterized by fraud", *Webster's,* at 904, and fraud is defined as "intentional misrepresentation, concealment or nondisclosure [to cause a person] to part with some valuable thing belonging to him".

---

*"Another reason for strict construction is to protect the individual against arbitrary discretion by officials and judges. . . .* A related argument is to the effect that since the power to declare what conduct is subject to penal sanctions is legislative rather than judicial, *it would risk judicial usurpation of the legislative function for a court to enforce a penalty where the legislature had not clearly and unequivocally prescribed it.* In other words, before a person can be punished his case must be plainly and unmistakably within the statute sought to be applied. Thus one court has stated that the reason for the rule was 'to guard against the creation, by judicial construction, of criminal offenses not within the contemplation of the legislature.' *It has also been asserted that since the state makes the laws, they should be most strongly construed against it.*

"The canon of interpretation has also been accorded the status of a constitutional rule under principles of due process, not subject to abrogation by statute." (Italics ours.)

*Webster's,* at 904.

We hold RCW 20.01.460(2)(d) cannot be construed to require a showing of fraudulent intent as an element of the crime defined in this statute. To attempt such a construction would be to read into the statute an element which is not there. *State v. Martell, supra.*

We conclude *Milecke* and *Northern Cedar* and cases decided upon a similar basis would be decided differently today. That saving judicial construction was a modification of the statute, which today is more properly left to the Legislature. More importantly, modern procedural due process rights, recognized with regard to proscription of activity by criminal statutes, preclude judicial construction in this instance. Therefore, on its face, RCW 20.01.460-(2)(d) violates the prohibition in Const. art. 1, § 17 against imprisonment for debt.

The judgment of the Superior Court is affirmed; the information against Mr. Enloe is dismissed with prejudice.

GREEN and THOMPSON, JJ., concur.