[No. 37079-4-II.   Division Two.   February 10, 2009.]

INTERNET COMMUNITY & ENTERTAINMENT CORPORATION, *Appellant*, v. THE WASHINGTON STATE GAMBLING COMMISSION, *Respondent.*

Lee H. Rousso (of *Green & Rousso, PLLC*), for appellant.

*Robert M. McKenna, Attorney General,* and *Jerry A. Ackerman* and *H. Bruce Marvin, Assistants,* for respondent.

¶1 BRIDGEWATER, J. — Internet Community & Entertainment Corp., d/b/a Betcha.com, an Internet betting exchange, appeals from a summary judgment in its declaratory judgment action, ruling that it violated the Washington State gambling act, chapter 9.46 RCW, by providing a forum for person-to-person social wagering. We hold that because Betcha.com customers agreed in advance that participants were not required to pay their losses, Betcha.com was not engaged in "gambling" as defined in the gambling act. Also, the listing of bets for a fee was not "bookmaking" because bookmaking rests upon Betcha.com's engaging in "gambling." We reverse and remand for entry of summary judgment in favor of Betcha.com.

## FACTS

¶2 From June 8, 2007, until on or about July 11, 2007, Betcha.com operated a web site that provided a patent-pending, person-to-person betting platform.[1] Internet users who registered and funded accounts on Betcha.com's web site could offer betting propositions to other users and accept betting propositions from other users by paying nominal fees to Betcha.com for providing the forum services facilitating that activity.[2] The unique aspect of Betcha.com's business model was that users conducted their activities with the understanding that bettors were

---

[1] Betcha.com is the creation of its founder and chief executive officer Nicholas Jenkins. Jenkins conceived the honor-based betting model in 2004, and launched the site three years later after he researched its feasibility under Washington law and consulted a gambling law expert.

[2] The web site was purportedly "modeled" on eBay with the goal of building a similar "social gathering spot," except that instead of buying and selling items, Betcha.com users could offer and accept betting propositions. *See* Clerk's Papers at 15, 199.

not required to pay if they lost a wager. Notably, users had to first agree that bets were "non-binding" in order to use the web site. Clerk's Papers (CP) at 86. The web site's page setting forth "Terms of Service" provided in relevant part:

1. ACCEPTANCE OF TERMS

Welcome to Betcha.com ("Betcha"), the world's first honor-based betting exchange. Betcha provides its service to you, subject to the following Terms of Service ("TOS") . . . .

2. DESCRIPTION OF SERVICE

Betcha provides users with a global platform to list and accept bets (the "Service"). Bets made on Betcha are made on the honor system--that is, bettors are not obliged to pay when they lose. We hope they will, of course, not because they have to, but because they should. In any case, bets made on Betcha carry no term, express or implied, that winning bettors will be paid when they win.

You understand and agree . . . .

The Service helps bring bettors together to make non-binding bets. You understand and agree that bets are made between you and fellow bettors, not Betcha. You are responsible for collecting on winning bets. You understand and agree that Betcha assumes no responsibility for bets that are unpaid or underpaid.

CP at 86. The web site repeatedly made the point that bets were nonbinding. On an informational page under the rubric "Why Betcha > **Why Not**," the web page stated:

At Betcha we treat others as we'd have them treat us. That's the Golden Rule, and it's the basis of our unique honor-based betting platform. So we're duty-bound to be honest about why Betcha might *not* be for you:

**Payments on wins are not guaranteed**.

Betting on Betcha is between individual bettors and groups of bettors. Not us. Bettors always retain the right not to pay their losses. Your protection against that possibility is the Honor Rating system—i.e., you leave negative feedback when/if you run into a welcher, and that feedback makes it that much less likely that other people will do business with your welcher in

the future. Betcha does not take a side in bets, one way or the other. And just like when you bet with your pals in the real world, there is no guarantee that losing bettors will pay their losses.

CP at 88. On the "**Overview**" page the web site stated:

**Betcha.com is a person-to-person betting platform. We connect people who like to bet.** . . . For legal reasons, betting on Betcha is done on the honor system--bettors who pay build their reputations (called "Honor Ratings"), bettors who don't may find it tough to get action in the future.

CP at 89. The frequently asked questions (FAQ) page included the question, "**What if the person I'm betting against doesn't pay?**" CP at 87. The web site answered, "[Y]ou are basically out of luck," explaining that although the Betcha.com web site would "hold the purse" during the pendency of an active bet by escrowing the bettors' possible losses, "[n]evertheless, a losing bettor can decide that, for whatever reason, he just doesn't want to pay." CP at 87; *see also* CP at 90 ("**Our Mission**" page stressing the web site's "honor-based betting platform"); CP at 92 (web site's answer to FAQ: "**Is this legal?**," explaining that because bettors can withdraw their bets and not pay their losses, they are not risking anything, thus they are betting without gambling).

¶3 To place a bet on Betcha.com's web site, a user had to first register, create a user name, provide a mailing address, and fund an account with a credit card payment over the Internet. Upon registration, he received an honor rating of 250, which could then go up or down based on his payment record and feedback from other bettors with whom he had bet. He could then bet with other users, individually or in pools, by drafting a bet or using pull-down menus provided on the web site to assist in formulating the proposition, or he could select from lists of predrafted wagers on a variety of topics. He could also set parameters such as how long the bet was to remain open, and the minimum "Honor Rating[ ]" that the accepting bettor must possess. CP at 401.

¶4 When a bettor listed a bet, the web site deducted a small fee from the bettor's account. When another bettor accepted the bet, the web site deducted a matching fee from both bettors' accounts. When a user listed or accepted a bet, the funds being wagered were placed in escrow until the bet settled. After the event that was bet upon had occurred, the web site sent an e-mail to the bettors telling them to return to the web site to make their claim. Winning bettors then had 72 hours to make a claim. If a losing bettor did not respond, he agreed to be bound by his opponent's claim. On the claim page, bettors could choose and click on a button indicating, "I won," "I lost," "I can't decide," or "I'm gonna welch." CP at 47, 423. Once a bet had been resolved, each bettor could leave the other feedback, which affected their respective honor ratings.[3]

¶5 On June 8, 2007, Betcha.com opened its web site to the public and began engaging in the activity described above. On June 21, 2007, agents from the Washington State Gambling Commission visited Betcha.com's Seattle office. The agents met with Jenkins, told him that commission personnel had determined that Betcha.com was engaged in illegal professional gambling and instructed him to stop operations, return all fees that Betcha.com had collected from its customers, and get legal counsel.

¶6 On July 6, 2007, Jenkins and his attorney met with commission personnel in Lacey. The commission served Jenkins with a formal cease and desist letter, and Jenkins indicated that he would file a complaint seeking declaratory judgment and injunctive relief.

¶7 On July 7, 2007, the commission secured a search warrant for Betcha.com's headquarters based on an affidavit by commission agents establishing probable cause that Betcha.com's operations violated various provisions of the act, chapter 9.46 RCW. The commission executed the search warrant on July 9, 2007, and seized computer equipment

---

[3] Pool betting was similar but accommodated more people. It also had a finite settlement period and allowed losers to welch by clicking on a button denoting, "I refuse to pay." CP at 48.

and documents used in the online betting operation.[4] Thereafter, Betcha.com notified the commission that it had shut down its web site.

¶8  On July, 10, 2007, Betcha.com served the commission with a complaint seeking declaratory judgment under chapter 7.24 RCW (Uniform Declaratory Judgments Act) that Betcha.com's web site does not violate the act. Betcha.com in part sought a determination that under the act social wagering on its web site was not "gambling" and that Betcha.com's facilitation of such wagering for a fee was not "professional gambling" or "bookmaking." CP at 558-60. The State filed a cross motion for summary judgment.

¶9  The Thurston County Superior Court heard argument on the parties' respective pending summary judgment motions and granted summary judgment to the State. The court ruled that as a matter of law, Betcha.com's Internet gambling operation violates chapter 9.46 RCW as follows: (1) persons placing bets on Betcha.com's web site are engaged in " '[g]ambling' " as defined in RCW 9.46.0237; (2) Betcha.com's web site promotes and facilitates gambling, and in doing so it transmits and receives gambling information by means of the Internet in violation of RCW 9.46.240; (3) Betcha.com engages in " '[b]ookmaking' " as that term is defined in RCW 9.46.0213 when it charges a fee to persons placing bets on its web site and when it charges a percentage commission on each matched wager on its web site; (4) Betcha.com's activities amount to " 'professional gambling' " as defined in RCW 9.46.0269(1)(a), (c), and (d); and (5) Betcha.com has created, possessed, and used gambling records in violation of RCW 9.46.217. CP at 540-41. Betcha.com filed a timely notice of appeal.

---

[4] The commission also began forfeiture proceedings against the seized property under RCW 9.46.231.

## ANALYSIS

### I. Standard of Review

¶10 We review a motion for summary judgment de novo, engaging in the same inquiry as the trial court and viewing the facts, as well as the reasonable inferences from those facts, in the light most favorable to the nonmoving parties. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005). Summary dismissal is proper only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Berrocal*, 155 Wn.2d at 590; CR 56(c). We review questions of statutory interpretation de novo. *Berrocal*, 155 Wn.2d at 590. Where statutory language is plain, free from ambiguity and devoid of uncertainty, there is no room for construction because the legislative intention derives solely from the language of the statute. *Berrocal*, 155 Wn.2d at 590. But in undertaking a plain language analysis, we must remain careful to avoid unlikely, absurd, or strained results. *Berrocal*, 155 Wn.2d at 590. Moreover, in discerning the plain meaning of a provision, we consider the entire statute in which the provision is found, as well as related statutes or other provisions in the same act that disclose legislative intent. *City of Spokane v. Spokane County*, 158 Wn.2d 661, 673, 146 P.3d 893 (2006).

### II. Washington Gambling Act of 1973

¶11 The Washington gambling act of 1973, chapter 9.46 RCW, prohibits and criminalizes "professional gambling" as defined in the act. *See* RCW 9.46.0269 (defining "professional gambling"); RCW 9.46.220 (describing elements of first degree professional gambling and designating that crime as a class B felony); RCW 9.46.221 (describing elements of second degree professional gambling and designating that crime as a class C felony); RCW 9.46.222 (describing elements of third degree professional gambling

and designating that crime as a gross misdemeanor). The legislature stated the act's purpose as follows:

> The public policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control.
>
> It is hereby declared to be the policy of the legislature, recognizing the close relationship between professional gambling and organized crime, to restrain all persons from seeking profit from professional gambling activities in this state; to restrain all persons from patronizing such professional gambling activities; to safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling; and at the same time, both to preserve the freedom of the press and to avoid restricting participation by individuals in activities and social pastimes, which activities and social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace.

RCW 9.46.010. The act specifically "authorize[s]" fundraising by charitable and nonprofit organizations, as well as bingo, raffles, amusement games, and the operation of punch boards, pull-tabs, card games, and other social pastimes when conducted pursuant to the rules of the act. RCW 9.46.010. The act also exempts fishing derbies, and certain fishing and hunting raffles. RCW 9.46.010. As to construction of the act's provisions, the noted policy section provides that "[a]ll factors incident to the activities *authorized* in this chapter shall be closely controlled, and the provisions of this chapter shall be liberally construed to achieve such end." RCW 9.46.010 (emphasis added).

## III. Foundational Elements

¶12 As noted, Betcha.com sought a declaratory judgment that its web site activities did not violate the act, but the trial court determined otherwise, ruling that its patrons were "gambling" as defined in RCW 9.46.0237; Betcha.com

transmitted and received gambling information over the Internet in violation of RCW 9.46.240; Betcha.com engaged in "bookmaking" as defined in RCW 9.46.0213; Betcha.com engaged in "professional gambling" as defined in RCW 9.46.0269(1)(a), (c), and (d); and Betcha.com created, possessed, and used gambling records in violation of RCW 9.46.217. Betcha.com assigned error to each of these rulings but did not discuss RCW 9.46.0269, RCW 9.46.217, and RCW 9.46.240 in its briefing. Instead, it argues generally that because social wagering on its web site does not amount to "gambling" as defined in RCW 9.46.0237, and it did not engage in "bookmaking" as defined in RCW 9.46-.0213, all other asserted statutory violations, which depend upon these definitions, fail. Betcha.com builds its entire case on these two arguments.

¶13 At oral argument, the State contended that some of the noted statutory violations relied on other definitions. While that is true, those other definitions, however, also rely on the foundational definitions of either "gambling" or "bookmaking." For instance, the trial court found that Betcha.com had engaged in "professional gambling" in violation of RCW 9.46.0269(1)(a), (c), and (d). The statute provides in relevant part as follows:

(1) A person is engaged in "professional gambling" for the purposes of this chapter when:

(a) Acting other than as a player or in the manner authorized by this chapter, the person knowingly engages in conduct which materially aids any form of *gambling activity*; or

. . . .

(c) Acting other than as a player or in the manner authorized by this chapter, the person knowingly accepts or receives money or other property pursuant to an agreement or understanding with any other person whereby he or she participates or is to participate in the proceeds of *gambling activity*; or

(d) The person engages in *bookmaking*; . . . .

RCW 9.46.0269 (emphasis added). As can be seen, "gambling activity" is an essential element of subsections (1)(a)

and (1)(c). But "gambling activity" is not separately defined, thus, we must refer to the definition of "gambling" that appears in RCW 9.46.0237. As for subsection (1)(d), because "bookmaking" is an essential element, we must refer to RCW 9.46.0213 for the definition of that term.

¶14 RCW 9.46.240 provides in relevant part that "[w]hoever knowingly transmits or receives *gambling information* by . . . the [I]nternet, . . . or knowingly installs or maintains equipment for the transmission or receipt of gambling information shall be guilty of a class C felony." (Emphasis added.) "Gambling information" is separately defined in RCW 9.46.0245 as "any wager made in the course of and any information intended to be used for *professional gambling.*" (Emphasis added.) As explained above, "professional gambling" requires either gambling or bookmaking.

¶15 RCW 9.46.217 provides in relevant part that "[w]hoever knowingly prints, makes, possesses, stores, or transports any *gambling record,* or buys, sells, offers, or solicits any interest therein, whether through an agent or employee or otherwise, is guilty of a gross misdemeanor." (Emphasis added.) "Gambling record" is defined in RCW 9.46.0253 to mean "any record, receipt, ticket, certificate, token, slip or notation given, made, used or intended to be used in connection with *professional gambling.*" (Emphasis added.) Again, the required element of "professional gambling" relies in turn on the definitions of either "gambling" or "bookmaking."

¶16 As can be seen, all of the statutory violations found by the trial court depend upon the presence of one of the foundational elements of "gambling" or "bookmaking."

IV. Gambling

¶17 In relevant part, the act defines "gambling" as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon *an agreement or understanding that the person or someone else will receive*

*something of value* in the event of a certain outcome." RCW 9.46.0237 (emphasis added).[5] Betcha.com argues that the italicized plain language is not met in this case because there can be no understanding that a bettor *will* receive something of value where the web site stresses that all bets are nonbinding. We agree. The salient point here is that as a prerequisite to registration and use of Betcha.com's web site, users must acknowledge and *agree* that all bets made on the web site are nonbinding. Accordingly, bettors cannot have an understanding that they *will* receive something of value if they win.

¶18 Betcha.com also contends that the trial court erred when it did not apply the rule of strict construction when addressing RCW 9.46.0237.[6] That statute in conjunction with the other provisions of the act define and prohibit criminal conduct. Statutes that define crimes must be strictly construed according to the plain meaning of their words to assure that citizens have adequate notice of the terms of the law, as required by due process. *State v. Enloe*, 47 Wn. App. 165, 170-71, 734 P.2d 520 (1987). Persons of common intelligence cannot be required to guess at the meaning of the enactment. *Enloe*, 47 Wn. App. at 170-71.

¶19 Here, Betcha.com correctly reads the undefined term "will," giving it its common meaning of "shall" and

---

[5] Betcha.com argued in part before the trial court that this definition codified the common law definition of "gambling," which requires three elements: consideration, chance, and prize. A public information pamphlet produced by the commission regarding Internet gambling demonstrates the commission's agreement with the notion that these three elements are required. The pamphlet explains simply that "[i]f one of these elements is removed, it is no longer a gambling activity" and such activity would be "okay to play on the Internet." CP at 40.

[6] Betcha.com now distinguishes between the rule of strict construction and the rule of lenity. It notes that they are corollary rules, the former being designed to operate in the first instance to preclude a broad reading of the language of a criminal statute, and the latter being applied at the end of the inquiry, serving as a tiebreaker in the event a court cannot determine the meaning of a criminal statute. *See* Br. of Appellant at 12 n.4 (citing 3 NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 59.03 (4th ed. 1986)); *see also State v. Gore*, 101 Wn.2d 481, 485-86, 681 P.2d 227 (1984) (stating where two possible constructions are permissible, the rule of lenity requires the court to construe the statute strictly against the State in favor of the accused). Before the trial court, however, Betcha.com used the terms interchangeably.

contends that the trial court erred by not doing so. *See State v. Postema*, 46 Wn. App. 512, 515, 731 P.2d 13 (a term that is not defined in a statute will be given its ordinary meaning), *review denied*, 108 Wn.2d 1014 (1987). Citing a dictionary definition, the State responds that "will" can also mean " 'simple futurity.' " *See* Br. of Resp't at 20 n.10 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2616--17 (2002)). The State's contention demonstrates that the statute can be read to have two reasonable meanings. Our Supreme Court has articulated the applicable rule in this circumstance as follows: "Where two possible constructions are permissible, the rule of lenity requires us to construe the statute strictly against the State in favor of the accused." *State v. Gore*, 101 Wn.2d 481, 485-86, 681 P.2d 227 (1984).[7]

¶20 Here, the trial court declined to apply the rule of lenity because the present posture of the case was "civil." Report of Proceedings (Nov. 9, 2007) at 54. But Betcha.com argues forcefully that the nature of the statute at issue determines whether the rule of lenity is to be applied, not the civil posture of the case in which the statute is being considered. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004) (statute with both criminal and noncriminal applications must be interpreted consistently, thus the rule of lenity applies whether the court encounters the statute in a criminal or noncriminal context); *see also Bingham,*

---

[7] The appellate courts have repeatedly relied on this formulation of the rule. *See, e.g., Staats v. Brown*, 139 Wn.2d 757, 769, 991 P.2d 615 (2000) (quoting *Gore*, 101 Wn.2d at 485-86). "The rule of lenity provides that where an ambiguous statute has two possible interpretations, the statute is to be strictly construed in favor of the defendant." *State v. Lively*, 130 Wn.2d 1, 14, 921 P.2d 1035 (1996) (citing *Gore*, 101 Wn.2d at 486). " '[U]nder the rule of lenity, where two possible statutory constructions are permissible, we construe the statute strictly against the State in favor of a criminal defendant.' " *State v. Bunker*, 144 Wn. App. 407, 420, 183 P.3d 1086 (2008) (alteration in original) (quoting *State v. B.E.K.*, 141 Wn. App. 742, 745, 172 P.3d 365 (2007) (citing *Gore*, 101 Wn.2d at 485-86)). "If the language of a criminal rule is susceptible to more than one meaning, the rule of lenity requires that we strictly construe it against the State and in favor of the accused." *State v. Quintero Morelos*, 133 Wn. App. 591, 596, 137 P.3d 114 (2006) (citing *Gore*, 101 Wn.2d at 485-86), *review denied*, 159 Wn.2d 1018 (2007). "Under the rule of lenity, we construe a statute strictly against the State and in favor of the accused when two constructions are permissible." *State v. Esquivel*, 132 Wn. App. 316, 324, 132 P.3d 751 (2006) (citing *Gore*, 101 Wn.2d at 485-86).

*Ltd. v. United States*, 724 F.2d 921, 924-25 (11th Cir. 1984) (rule of lenity applies when construing criminal statute in a declaratory judgment action—a civil context).

¶21 The State responds that the appropriate rule of construction is found in the act itself, relying on the "liberally construed" language appearing in the last sentence of the legislature's policy declaration found in RCW 9.46.010. But that statute states in relevant part "[a]ll factors incident to the activities authorized in this chapter shall be closely controlled, and the provisions of this chapter shall be liberally construed to achieve such end." RCW 9.46.010. The plain language of this provision clearly provides that liberal construction is to be applied to chapter provisions regarding the regulation of enumerated "activities authorized." To read the "liberally construed" language as broadly as the State advocates would require us to add language to the statute, which we cannot do. *See Vita Food Prods., Inc. v. State*, 91 Wn.2d 132, 134, 587 P.2d 535 (1978) (a court will not add words to a statute even if it believes the legislature intended something else but failed to express it adequately).

¶22 Thus, the trial court should have applied strict construction and the rule of lenity when interpreting RCW 9.46.0237. There is no logical basis for concluding that bettors have either an agreement or understanding that winners *will* be paid. Accordingly, there is nothing risked, which is the essence of both the common law and statutory definition of "gambling." *See* RCW 9.46.0237. Thus, neither the users nor Betcha.com engaged in "gambling."

## V. Bookmaking

¶23 The act separately defines "bookmaking" as "accepting bets, upon the outcome of future contingent events, as a business or in which the bettor is charged a fee or 'vigorish' for the opportunity to place a bet." RCW 9.46.0213. This statute is also ambiguous. "Accepting bets" can be reasonably read to have two different meanings. One

can accept a bet (vis-à-vis offer and acceptance) as a player or stakeholder who takes a position in the bet. Or, as in Betcha.com's business model, one can accept (meaning "receive") a bet from a bettor for purposes of posting it on the web site for another bettor to accept, without having any interest (i.e. without taking a position) in the bet.

¶24 Here, Betcha.com listed (i.e. received and posted) bets from registered bettors on its web site for other registered bettors to consider. It also charged bettors a fee for listing their bets. This conduct meets the second reasonable reading of the definition of "bookmaking" as above described, but not the first. Betcha.com contends that because it did not "accept bets" (as a player or stakeholder with an interest in the outcome), it was not "bookmaking" as statutorily defined. Br. of Appellant at 36. Because the statute can be read to have two reasonable meanings, it is ambiguous, and the rule of lenity applies. *See Gore*, 101 Wn.2d at 485-86 (where two possible constructions are permissible, the rule of lenity requires the court to construe the statute strictly against the State in favor of the accused). Applying that rule in Betcha.com's favor, the definition of "bookmaking" requires one to "accept bets," meaning to take a position in the bet. As noted, Betcha.com did not do so. Accordingly, applying the rule of lenity, Betcha.com did not engage in "bookmaking" as defined in RCW 9.46.0213.

## VI. Absence of Foundational Elements Is Dispositive

¶25 Our determination that the statutory definitions of "gambling" and "bookmaking" are not met is dispositive of this case. Because these foundational elements are absent, the trial court erred in ruling that Betcha.com's activities amounted to "professional gambling" as defined in RCW 9.46.0269(1)(a), (c), and (d). The court also erred in ruling that Betcha.com violated RCW 9.46.240, which criminalizes the transmitting and receiving of "gambling information" over the Internet. The court

likewise erred in ruling that Betcha.com violated RCW 9.46.217, which criminalizes the making, possessing, or storing of "gambling record[s]."

¶26 As discussed above, a required element of "professional gambling" as defined in RCW 9.46.0269(1)(a) and (c) is conduct aiding or facilitating "gambling activity." Because the act does not define "gambling activity," we must resort to the definition of "gambling" found in RCW 9.46.0237. Because the activities at issue here do not meet the statutory definition of "gambling," there is in turn no "gambling activity" and thus no "professional gambling" as defined in RCW 9.46.0269(1)(a) and (c). Similarly, because there is no bookmaking, there is no "professional gambling" as defined in RCW 9.46.0269(1)(d).

¶27 Likewise, the absence of "professional gambling" is determinative of whether Betcha.com violated RCW 9.46.240 and RCW 9.46.217. The former statute in relevant part criminalizes the transmission or receipt of "gambling information" over the Internet. *See* RCW 9.46.240. As noted, "gambling information" is separately defined in RCW 9.46.0245 as "any wager made in the course of and any information intended to be used for *professional gambling*." (Emphasis added.) As explained, "professional gambling" requires either gambling or bookmaking. The absence of these foundational elements means that there is no professional gambling, thus there is no gambling information, and thus there is no violation of RCW 9.46.240.

¶28 Similarly, RCW 9.46.217 in relevant part criminalizes the making, possessing, or storing of "any gambling record." "Gambling record" is defined in RCW 9.46.0253 to mean "any record . . . used or intended to be used in connection with *professional gambling*." (Emphasis added.) Again, because there is no gambling or bookmaking, there is in turn no professional gambling, no gambling record, and no violation of RCW 9.46.217.

¶29 For the reasons discussed, we reverse the trial court's grant of summary judgment to the State and re-

mand for entry of summary judgment in favor of Betcha.com in compliance with this decision.

ARMSTRONG, J., concurs.

¶30 HOUGHTON, J. (dissenting) — I respectfully dissent from my colleagues' decision that allows Betcha.com to operate as it intends. I do so fully knowing and understanding that the rules of statutory construction could provide a basis for the majority's opinion. And although, in my usual judicial course, I follow the majority's cited statutory construction principles, I cannot do so here. Another principle requires us not to read a statute so literally that it would result in absurd consequences. *Tingey v. Haisch*, 159 Wn.2d 652, 663-64, 152 P.3d 1020 (2007). Unfortunately, absurd consequences will occur here.

¶31 In enacting the Washington State Gambling Act, chapter 9.46 RCW, the legislature declared that

[t]he public policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control.

RCW 9.46.010.

¶32 Certainly the legislature did not intend that Betcha.com, while running its operation on foreign-based servers, could provide an unregulated platform for Internet wagering that undoubtedly will result in unpaid wagers being collected through unlawful means. Most certainly this is not the result the legislature intended when it set forth its strong declaration of public policy against unregulated gambling. Thus, I dissent.

Review granted at 166 Wn.2d 1019 (2009).