[No. 20856-7-III.   Division Three.   February 25, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. BART WAYNE BRAMME, *Appellant*.

*Janet G. Gemberling*, for appellant.

*Gary A. Riesen, Prosecuting Attorney*, and *James A. Hershey, Deputy*, for respondent.

BROWN, C.J. — Bart Bramme pleaded guilty to one count of manufacturing methamphetamine. The sentencing court declined to impose a Drug Offender Sentencing Alternative (DOSA) sentence. In doing so, the sentencing court reasoned (1) the quantity of drugs involved in the offense was not small for purposes of DOSA, and (2) DOSA was not administered as the legislature intended to ensure qualified

offenders received needed treatment. Mr. Bramme appeals contending the sentencing court violated the separation of powers doctrine. We affirm on the basis of the drug quantity alone and therefore decline to resolve the constitutional question.

## FACTS

Mr. Bramme pleaded guilty to one count of unlawful manufacture of a controlled substance, methamphetamine. Pursuant to the plea agreement, the State requested a presentence investigation (PSI). At the plea hearing, the State indicated it would seek a sentence at the bottom end of the standard range of 57 to 75 months and it would oppose Mr. Bramme's request for a DOSA sentence.

At the sentencing hearing, the State recommended Mr. Bramme not receive a DOSA sentence, but rather be confined at the low end of the standard range. The State then called two witnesses regarding "how people are supervised and how the DOSA program's working in the Department of Corrections." Report of Proceedings (RP) (Dec. 19, 2001) at 3.

Lynn West, a community corrections officer, testified that the Department of Corrections (DOC) assesses each incoming offender and assigns him or her a risk and needs level of A (most serious), B, C, or D (least serious). Ms. West testified that DOSA offenders in the C and D categories receive no face-to-face supervision once they are released from the institution.

> They would be supervised by kiosk machines. They would be required to come in and report to a machine once a month, and keep a current address posted with the Department of Corrections. And, after intake, when they're told that they need to go to treatment, it would be their responsibility to go to treatment, it would be their responsibility to begin that process.

RP (Dec. 19, 2001) at 5.

When asked if DOC would conduct urinalysis (UA) testing, Ms. West replied: "No. The Department's direction is

not to have face-to-face supervision with the low-risk of-fenders. However, the caseload is event driven. So, if something presented, then they may be UA'd, but it's not mandatory." RP (Dec. 19, 2001) at 5-6. Ms. West further testified there was no formal system for getting DOSA offenders into treatment programs, and that a number of such offenders receive no treatment at all. Offenders in the C category must file quarterly treatment reports, but not D category offenders. RP (Dec. 19, 2001) at 13.

Skip Butler, a supervisor for DOC, testified that a Wenatchee survey indicated one-third of DOSA offenders are not treated in the institution before release. And he said DOC has difficulty obtaining treatment information from the institutions because such information is ordinarily treated as confidential medical information.

In requesting a standard-range sentence without DOSA, the State noted Mr. Bramme had a history of abandoning previous substance abuse treatment. The State further argued:

> Also involved in the assessment as to what's in the interest of the community versus the defendant, is the fact that, though he scores a B now, if he comes out of the institution and ends up in a classification of being a C or a D, he, in essence, isn't being supervised as, I would submit, was contemplated by the—by the DOSA statute, in that somebody's actually supposed to be actually supervised during that period.
>
> This isn't just a matter of if they complete inpatient treat-ment or treatment in the institution, then the treatment thing is over, and they're rewarded by having their time cut in half. But, when their time's cut in half, it contemplates a system whereby they're going to actually be supervised. And I would submit, reporting to a machine does not constitute being supervised.

RP (Dec. 19, 2001) at 27.

The State additionally argued Mr. Bramme was ineligible for DOSA because his conviction did not involve a small amount of contraband; he participated in cooking a 5,000 cold tablet batch of methamphetamine.

Steven Sype, the PSI reporter, gave the trial court a Tacoma News Tribune newspaper article questioning the effectiveness of DOSA. A sub-headline of the article states: "Program called joke by Pierce prosecutor." Clerk's Papers at 28. The article contains quotes from prosecutors and superior court judges highly critical of the DOSA program, as well as supportive comments from defense lawyers and program administrators. The article also contained some specific examples of DOSA offenders reoffending after release from institutions.

Mr. Sype further pointed out that Mr. Bramme was not in possession of 5,000 pills when he was apprehended; however, he admitted participating in methamphetamine production. Mr. Sype also recounted Mr. Bramme's previous failure to complete treatment. Mr. Sype further stated:

> And I guess it's my feeling that we need to look at meth cooks or distributors a little harsher than perhaps just simply users—and I think Mr. Bramme was definitely a distributor and probably a manufacturer—if we are going to get any handle on this—this meth scourge that's ravaging our state.

RP (Dec. 19, 2001) at 32.

Counsel for Mr. Bramme argued his client was eligible for DOSA notwithstanding problems plaguing the system. Then counsel stated:

> I guess my rhetorical question to the Court is this: Are we going to sit here and just basically judicially override DOSA in our courtrooms, when that's the legislature's job? I didn't realize that this was going to turn into a constitutional law argument of separation of powers on a sentencing on a drug case.

RP (Dec. 19, 2001) at 34.

Because there was disagreement as to whether the offense involved a small amount of drugs for DOSA purposes, the sentencing court granted Mr. Bramme's request for a contested "real facts" hearing. RP (Dec. 19, 2001) at 51.

At the real facts hearing, a detective with extensive experience in investigating methamphetamine labs testified that 5,000 pseudoephedrine or ephedrine tablets could

yield from 75 to 552 grams of methamphetamine, depending on the size of the tablets and the skill of the methamphetamine cook. The quantity of 28.3 grams equals one ounce.

Relying on the detective's testimony, the State renewed its argument that Mr. Bramme was not eligible for DOSA because of the amount of contraband involved. Additionally, the State briefly reiterated its concerns with DOSA's effectiveness.

The sentencing court declared Mr. Bramme ineligible for DOSA and imposed a midrange sentence of 66 months. With respect to DOSA eligibility, the sentencing court reasoned the quantity of drugs "involved" in the offense was substantial. RP (Jan. 11, 2002) at 78. Additionally, the court reasoned the DOSA program did not work as the legislature intended, reasoning:

> The evidence indicates to the Court that the Department of Corrections, for whatever reason, whether it's the executive branch's decision to allocate its moneys different, or the legislature is not properly funding it, but the sentencing alternative anticipated by the legislature is obviously not one that actually exists.
>
> I assume every legislator who voted in favor of offering DOSA believed that anyone that went there—or everyone who went through a DOSA sentence got treatment. One hundred percent; not 98 percent; not one third, that was testified to, but a hundred percent. And that's not occurring here.
>
> The—your standard range is high enough that maybe you have a chance of—as high as 50 percent of getting treatment if I sentence you to that. But, given the severity of your behavior that you are being convicted of this crime for, and the ineffectiveness of the program, the Court cannot find that the community would benefit from a DOSA sentence, if I am interpreting the word "involved" wrong.

RP (Jan. 11, 2002) at 79-80.

Mr. Bramme appealed. A commissioner of this court denied the State's motion on the merits.

## ANALYSIS

The issue is whether the sentencing court violated the separation of powers doctrine when it based its sentencing decision on what it perceived to be the general ineffectiveness of DOSA.

■ Ordinarily, a sentencing court's decision not to apply DOSA is unreviewable. *State v. Conners*, 90 Wn. App. 48, 53, 950 P.2d 519 (1998). And a defendant generally may not appeal a standard range sentence. *Id.* at 52. A DOSA sentence is an alternate form of standard range sentence because it "is split evenly between incarceration and community custody based upon the midpoint of the total standard range." *State v. Williams*, 112 Wn. App. 171, 176, 48 P.3d 354 (2002) (citing RCW 9.94A.660(2)). If the offender violates the terms of the DOSA sentence, he or she may have to serve the unexpired term of the standard range sentence. RCW 9.94A.660(5). Accordingly, "a DOSA sentence is always within the standard range because it is always based upon the midpoint of the standard range." *Williams*, 112 Wn. App. at 177.

■ Nevertheless, a defendant may appeal a standard range sentence on constitutional grounds. *Conners*, 90 Wn. App. at 52; *State v. McNeair*, 88 Wn. App. 331, 334, 944 P.2d 1099 (1997). Here, Mr. Bramme grounds his appeal on an alleged violation of the separation of powers doctrine.

"The doctrine of separation of powers comes from the constitutional distribution of the government's authority into three branches." *State v. Moreno*, 147 Wn.2d 500, 505, 58 P.3d 265 (2002). The state constitution establishes three branches of governmental authority: the legislative, article II, section 1, the executive, article III, section 2, and the judicial, article IV, section 1. *Id.* "Each branch of government wields only the power it is given. The purpose of the doctrine is to prevent one branch of government from aggrandizing itself or encroaching upon the 'fundamental functions' of another." *Id.* (citing *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994)).

■ Because Mr. Bramme raises a theory grounded in the state and federal constitutions, we do not summarily dismiss his appeal. *See Conners*, 90 Wn. App. at 52. Nevertheless, it is well settled an appellate court will avoid a constitutional issue if it can find any other basis for its decision. *See State v. Hall*, 95 Wn.2d 536, 539, 627 P.2d 101 (1981). Here, the sentencing court partly based its determination on the quantity of drugs "involved" in the offense. Accordingly, we first consider whether the quantity of drugs precluded DOSA.

DOSA applies to violations of the Uniform Controlled Substances Act (UCSA), chapter 69.50 RCW. RCW 9.94A-.660(1)(c). It is a requirement of DOSA eligibility that the UCSA "offense involved only a small quantity of the particular controlled substance as determined by the judge upon consideration of such factors as the weight, purity, packaging, sale price, and street value of the controlled substance." RCW 9.94A.660(1)(c). Mr. Bramme pleaded guilty to unlawful manufacture of methamphetamine, a violation of the UCSA. RCW 69.50.401(a)(1)(ii).

■ The DOSA statute does not define the terms "involved" or "small quantity." And no recorded cases exist discussing the meaning of these terms in connection with methamphetamine. To resolve this issue, we must interpret the DOSA statute.

In interpreting a statute, we strive to ascertain the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Absent ambiguity, we derive the plain meaning of the statute "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id.* at 11. If the plain meaning inquiry reveals an ambiguity, we may resort to various tools of statutory construction, such as legislative history. *Id.* at 11-12.

As for the meaning of "involved," the plain language of the DOSA statute does not require the size determination to be made solely on the basis of drugs seized in connection with the offense. Rather, "involved" is used in the sense of

implicated, embroiled, or entangled. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1191 (1993). Drugs can be involved in an offense in ways other than possession.

In this connection, it is possible for an offender to manufacture and ship a significant quantity of contraband prior to the arrest. Accordingly, a small quantity of the drug may be found at the arrest scene, but a far larger quantity may have already reached the street. If credible evidence exists pointing to the defendant's involvement in the production of a significant quantity of contraband, the sentencing court could conclude the manufacturing offense did not involve a small quantity.

"Small" is a relative term for DOSA purposes. In the case of methamphetamine, an individual user can purchase the drug in quantities as small as one gram. *State v. Zunker*, 112 Wn. App. 130, 136, 48 P.3d 344 (2002). Here, unchallenged facts exist of methamphetamine production in far larger quantities.

■ This interpretation is consistent with the legislative purpose of DOSA that is focused on treatment for addicted offenders who lack a history of violent crime and large quantity drug offenses. *See State v. Kane*, 101 Wn. App. 607, 614, 5 P.3d 741 (2000) (discussing legislative history of DOSA). Applying DOSA to offenders involved in significant drug manufacturing activities conflicts with the policy underlying the statute.

Here, the sentencing court determined from the PSI that Mr. Bramme was arrested in connection with a methamphetamine operation recently connected to 5,000 processed cold tablets. Mr. Bramme does not dispute this on appeal.

A police detective testified at the real facts hearing that 5,000 cold tablets could be processed into 75 to 552 grams of methamphetamine, depending on the size of the tablets and the skill of the cook. According to the sealed PSI, the police seized 1.7 grams of methamphetamine in discarded coffee filters at the manufacture site. Accordingly, the determina-

tion that the offense did not involve a small quantity of drugs was based on both the greater quantity processed and the lesser quantity seized.

■ Because undisputed facts show Mr. Bramme was involved in a significant drug manufacturing operation, the sentencing court did not abuse its discretion in declaring him ineligible for DOSA on the basis of drug quantity.[1]

We note the sentencing court did not indicate whether the quantity of drugs alone justified exclusion from DOSA. But given the record, we are confident the trial court would have found Mr. Bramme ineligible on that basis alone. Accordingly, we do not address the merits of Mr. Bramme's otherwise intriguing separation of powers argument.[2]

Affirmed.

SWEENEY and KURTZ, JJ., concur.

---

[1] Alternatively, Mr. Bramme's repeated failures to complete previous substance abuse treatment programs indicate DOSA would have been of no benefit to either him or the community. RCW 9.94A.660(2).

[2] In passing, we note if DOSA has certain systemic flaws, the legislature can repair them. *See State v. Enloe,* 47 Wn. App. 165, 170, 734 P.2d 520 (1987) (comparing judicial and legislative functions).