FILED
COURT OF APPEALS
DIVISION II

2014 DEC -2 AM 8: 58

STATE OF WASHINGTON

BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44840-8-II |
| Respondent, | |
| v. | |
| ANDREW STEELE, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J — Andrew Steele appeals from his conviction for unlawful possession of a firearm in the first degree, possessing a stolen firearm, and possessing stolen property in the third degree. Steele argues that the police violated his *Miranda*[1] rights when they contacted and spoke with him about a missing firearm and other items and the trial court abused its discretion by categorically refusing to consider him for a Drug Offender Sentencing Alternative (DOSA) sentence.[2] We reject Steele's claims and affirm his convictions and sentence.

## FACTS

While Officer Joshua Deroche ate dinner somebody broke into his truck. The suspect stole a backpack containing Deroche's uniform, badge, personal handgun, and several assault rifle ammunition magazines. The handgun was loaded and operational.

The following day, Andrew Steele visited his friend, James Baldwin. Steele offered to show Baldwin a "secret." Report of Proceedings (RP) (Mar. 19, 2013) at 124. Steele then showed Baldwin a gun and a backpack. The backpack contained two rifle magazines, a pair of binoculars, and a police badge. Steele claimed he had found the backpack and gun in some bushes in Fife.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] RCW 9.94A.660.

Baldwin told Steele to turn in the items, but Steele refused, stating that he planned to sell the gun and backpack. Baldwin contacted the police the next morning.

Detective Stuart Hoisington visited Steele's house, contacted Steele's wife by phone, and attempted to call Steele's cell phone twice. The second time, Hoisington successfully contacted Steele by phone. Hoisington told Steele "there [were] some missing items . . . and that his name had come up in the investigation as someone who might be able to help us locate them." RP (Mar. 19, 2013) at 35. Hoisington never told Steele that he had to meet with the police or that he would be arrested if he failed to do so. Steele agreed to meet with police at a grocery store.

Hoisington, accompanied by Detective Erik Timothy, went to meet Steele. Both detectives were in plain clothes, although their badges and weapons were visible. Several patrol cars were stationed in the area, but not in sight.

Steele arrived at the grocery store after the detectives and called Hoisington's phone to tell the detectives his location. Steele met the detectives and admitted he had been in possession of the stolen items, but that he no longer had them. Steele offered to show the police where he had last seen the missing items, at a truck stop in Fife. The detectives frisked Steele and placed him in Timothy's unmarked car. Steele was not handcuffed or otherwise restrained during this time, and Timothy's car did not contain a partition or cage.

Steele directed the detectives to the truck stop. He told the police the items were in a bush. The detectives took turns searching the bushes, with one detective always staying in the car with Steele. The search did not turn up the stolen property.

Following the search, the detectives asked Steele if he would be willing to accompany them to police headquarters and make a formal statement. Steele agreed to do so. At the station, Steele received *Miranda* warnings for the first time. Steele stated that he understood his rights and wished

to answer the police's questions. Steele never asked to leave or to speak to an attorney and never invoked his right to remain silent.

After he gave his statement, Steele was placed in a holding cell. Approximately 15 to 20 minutes later, the police asked Steele if he could get the gun and badge back. Steele said that he could "probably get the gun and badge back" within 48 hours and asked the police if there was a reward for the recovery of the gun. RP (Mar. 20, 2013) at 209.

## PROCEDURAL HISTORY

The State charged Steele with unlawful possession of a firearm in the first degree, possessing a stolen firearm, and possessing stolen property in the third degree. Prior to trial, Steele moved to suppress "any and all statements obtained by law enforcement of the defendant." Clerk's Papers (CP) at 10. The court held a confession hearing pursuant to CrR 3.5, at which Steele testified that he understood he did not have to speak with the detectives. He explained that he spoke with them because he was "actually trying to do what [he] believe[d] was the right thing at the time." RP (Mar. 19, 2013) at 78. Steele testified that the detectives did not accuse him of doing anything wrong; "[t]hey just said [he] possibly knew where some missing items were" and Steele wanted to "clear the air." RP (Mar. 19, 2013) at 80. Steele further testified that he had heard the *Miranda* warnings many times before and knew what his *Miranda* rights were.

The trial court entered written findings of fact that: (1) Steele voluntarily agreed to meet with the detectives; (2) Steele voluntarily agreed to show the detectives where he claimed to have seen the stolen items; (3) the detectives properly advised Steele of his *Miranda* rights; (4) Steele knowingly, voluntarily and intelligently waived those rights; and (5) the detectives did not coerce Steele into saying anything to the police.

3

Based on these findings of fact, the trial court entered the following written conclusions of law:

1. The defendant was not in "custody" for *Miranda* purposes, i.e., having his freedom curtailed to the degree associated with a formal arrest, until he was handcuffed and detained after his formal interview at the police station.

2. Prior to that point, the defendant's interaction with law enforcement was a voluntary, consensual, and cordial social contact that was free of coercion. .

3. Once advised of his *Miranda* rights, the defendant knowingly, voluntarily, and intelligently waived those rights and spoke with law enforcement.

CP at 72. A jury returned guilty verdicts on all three counts.

At his sentencing hearing, the State recommended a sentence of 159 months, the low end of the sentencing range. Steele requested a DOSA sentence. The trial court denied Steele's request, explaining that:

I have a creed that I believe people can change you, but I also believe that people who have offender[ ] [scores] that exceed nine shouldn't get the benefits of leniency. Mr. Steele knew what his issues were. He knew when he asked for the last DOSA that if he didn't change his ways . . . he'll be right back in the system.

With an offender score nine plus, if you want to be an addict and you want to use, then you need to find a way to do that without stealing from other people or victimizing other people. You haven't done that. I don't feel an urge to give you a DOSA sentence to avoid a lengthy prison term. The prison term is caused by your offender score, and those are items that you created for yourself.

RP (Apr. 30, 2013) at 391-92. The court followed the State's recommendation and sentenced Steele to 159 months in prison. Steele timely appealed his conviction and sentence.

## ANALYSIS

I. *MIRANDA* RIGHTS

Steele argues that the trial court erroneously admitted his pre- and post-*Miranda* warning statements in violation of his right against self-incrimination. The State argues that until the police

4

handcuffed Steele, he was not in custody and that the trial court correctly admitted the statements. We agree with the State and affirm the trial court.

A.    Standard of Review

The Fifth Amendment to the United States Constitution[3] and article I, section 9 of the Washington Constitution[4] guarantee a defendant's right against self-incrimination. *State v. Easter*, 130 Wn.2d 228, 235, 922 P.2d 1285 (1996). The two provisions are given the same interpretation. *Easter*, 130 Wn.2d at 235. In order to effectuate these provisions, law enforcement must advise a suspect of his *Miranda* rights whenever the suspect is subjected to a custodial interrogation by an agent of the State. *State v. Sargent*, 111 Wn.2d 641, 647, 762 P.2d 1127 (1988). Here, the issue involves custody.

Whether a suspect is in custody is a mixed question of law and fact. *State v. Solomon*, 114 Wn. App. 781, 787, 60 P.3d 1215 (2002) (citing *Thompson v. Keohane*, 516 U.S. 99, 112-13, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995)); *cf. State v. Rankin*, 151 Wn.2d 689, 709, 92 P.3d 202 (2004) (whether or not a suspect is seized by police is a mixed question of law and fact). Accordingly, we defer to the trial court's findings of fact but review its legal conclusions de novo. This means that unchallenged findings of fact are verities on appeal, and where substantial evidence supports challenged findings of fact, those facts are binding on appeal. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). Substantial evidence is evidence sufficient to "persuade a fair-minded, rational person of the truth of the finding." *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Yet, whether the facts indicate that the defendant was in custody is a legal question we review de novo. *Solomon*, 114 Wn. App. at 788-89. We address both inquiries in turn.

---

[3] "No person . . . shall be compelled in any criminal case to be a witness against himself."

[4] "No person shall be compelled in any criminal case to give evidence against himself."

B.      Factual Inquiry

Steele does not challenge the trial court's findings that he "voluntarily agreed to meet with the detective" at the grocery store, that he affirmatively "called the detective" when he arrived, or that he "voluntarily agreed to show the detectives where he claimed that he had last seen the stolen police property that they were looking for." CP at 69, 70. Unchallenged findings of fact are verities on appeal. *Broadaway*, 133 Wn.2d at 131.

Steele challenges the trial court's conclusion of law that his "interaction with law enforcement was a voluntary, consensual, and cordial social contact that was free of coercion." CP at 72. This putative conclusion of law is actually a finding of fact, and we analyze it as such. *See Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). We hold that the finding is supported by substantial evidence. The police never told Steele he had done anything wrong. The police never told Steele that he had to meet with them, or that he would be arrested if he failed to do so. Rather, Steele testified that he spoke with the police because he was "trying to do what [he] believe[d] was the right thing at the time" and that he wanted to "clear the air." RP (Mar. 19, 2013) at 78, 80. Therefore, as the trial court found and Steele did not contest, Steele voluntarily agreed to meet with the detectives at the grocery store. On the day of the meeting, Steele came to the parking lot and affirmatively contacted the police to let them know that he had arrived. Steele affirmatively volunteered the location of the truck stop where he claimed the stolen items were located, and offered to take the police there and show them.

Steele did testify that the police knocked on his doors and windows during their initial attempt to contact him at his home, and that he feared the police would beat him up. But in light of the evidence that Steele voluntarily participated in the police's search for the stolen items, a fair-minded, rational person could reject Steele's bare assertion that he thought he would be beaten

6

up if he did not comply. *See Hill*, 123 Wn.2d at 644. We hold that the trial court's findings were supported by substantial evidence.

Steele also challenges the trial court's finding that "[a]t no point . . . did anyone engage in any direct or implied threats, promises, or coercive conduct in order to get the defendant to (a) meet for an interview, (b) go to the truck stop to show the detectives where he claimed he had left the stolen property, or (c) go to the police station to give a formal taped interview." CP at 71. For the same reasons described above, substantial evidence existed for the trial court to conclude that the police did not coerce Steele into speaking with them. We hold that the challenged findings of fact are binding on appeal.

C.     Legal Inquiry

Custody exists only if a reasonable person in Steele's position would have believed that he was in police custody "with the loss of freedom associated with a formal arrest." *State v. Lorenz*, 152 Wn.2d 22, 37, 93 P.3d 133 (2004).

Here, a reasonable person in Steele's position would not have believed that he was in police custody during the search for the stolen items. Steele voluntarily agreed to meet with the police, affirmatively came forward to contact the police on the day of the meeting, and voluntarily agreed to show the detectives where he claimed the stolen items could be found. Steele had not been accused of any wrongdoing and would not have been arrested if he had refused to cooperate. Steele's freedom was not curtailed during his interactions with the police; instead, he cooperated with the investigation of his own accord, because he wanted to do the right thing. We hold that Steele was not in custody until the detectives took him to the police station and gave him *Miranda* warnings.

Steele also argues that his pre-warning statements tainted his post-warning statement at the police station. We reject this argument because Steele's pre-warning statements were voluntary and not the product of custodial interrogation, and the trial court properly admitted Steele's pre-warning statements. We hold that the police did not violate Steele's *Miranda* rights, and we affirm his convictions.

## II.    DOSA

Steele argues that the trial court failed to exercise its discretion when it categorically denied his request for a DOSA. The State argues that the trial court properly considered and rejected the DOSA. We agree with the State and affirm the trial court.

### A.    STANDARD OF REVIEW

The DOSA program authorizes trial judges to sentence eligible, non-violent offenders to a reduced sentence, substance abuse treatment, and increased supervision in an attempt to help the offender recover from addiction. *State v. Grayson*, 154 Wn.2d 333, 337-38, 111 P.3d 1183 (2005). Whether to give a DOSA is a decision left to the trial judge's discretion. *Grayson*, 154 Wn.2d at 335. The trial court's decision will not be disturbed on appeal unless the court's decision is "'manifestly unreasonable or based on untenable grounds or untenable reasons.'" *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013) (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)).

Generally, the DOSA sentencing decision is not reviewable. *Grayson*, 154 Wn.2d at 338 (citing RCW 9.94A.585(1); *State v. Bramme*, 115 Wn. App. 844, 850, 64 P.3d 60 (2003)). However, an offender may always challenge the procedure by which a sentence is imposed. *Grayson*, 154 Wn.2d at 338. Here, Steele asserts that the trial court failed to exercise its statutory discretion by categorically refusing to consider him for a DOSA.

B.    CONSIDERATION OF DOSA SENTENCE

Although no defendant is entitled to an exceptional sentence below the standard range, every defendant is entitled to ask the trial court for such a sentence "and to have the alternative actually considered." *Grayson*, 154 Wn.2d at 342. When a trial court categorically refuses to consider a DOSA, or refuses to consider a DOSA for a class of offenders, the trial court fails to exercise discretion and is subject to reversal. *Grayson*, 154 Wn.2d at 342. For example, when a trial court denies a DOSA for the "primary reason" that the trial judge believes there is inadequate funding to support the program, the court commits reversible error. *Grayson*, 154 Wn.2d at 342.

In *Grayson*, the trial court failed to consider the defendant's individualized circumstances on the record. 154 Wn.2d at 342. Rather, the *only* reason for denying the DOSA that the judge articulated was the judge's belief that there were insufficient funds. *Grayson*, 154 Wn.2d at 342. Here, in contrast, the judge took Steele's particular circumstances into account. At Steele's sentencing hearing, the State pointed out that Steele had already had multiple opportunities to engage in substance abuse treatment. The court reviewed notes from a previous conviction after which Steele had also asked for a DOSA.

After taking this information into account, the court stated that:

> Mr. Steele knew what his issues were. He knew when he asked for the last DOSA that if he didn't change his ways, and specifically the examiner said if he doesn't stop hanging with people that get him to use once again and cause him to relapse, he'll be right back in the system. Those were prophetic words in 2007 when they were spoken.

RP (Apr. 30, 2013) at 391. The court reviewed Steele's history relating to addiction and crime, relied on that information, and made a determination on the record that Steele should not receive a DOSA. Although the court also stated that "I also believe that people who have offender[ ] [scores] that exceed nine shouldn't get the benefits of leniency," there is no indication that Steele's

offender score was the primary reason the court denied the DOSA. RP (Apr. 30, 2013) at 391. The court expressly relied on Steele's failure to take advantage of prior treatment opportunities and to heed the advice of his examiner in a previous case. We hold the trial court did not abuse its discretion by denying the DOSA. Therefore, we affirm his convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Bjorgen, A.C.J.

Maxa, J.