**IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 77707-6-I |
| Respondent, | |
| v. | DIVISION ONE |
| BRIA BEATRICE WALKER, | UNPUBLISHED OPINION |
| Appellant. | FILED: July 29, 2019 |

LEACH, J. — Bria Walker was convicted of second degree possession of stolen property, theft of a motor vehicle, and two counts of second degree identity theft after being terminated from Adult Drug Treatment Court (drug court). She appeals the superior court's denial of her request for a drug offender sentencing alternative (DOSA) and the imposition of four legal financial obligations (LFOs). She also challenges the adequacy of the court's findings of fact and conclusions of law entered upon her convictions but not the sufficiency of the evidence to support the convictions.

First, the court reasonably exercised its discretion when it denied her DOSA, appropriately considering the record before it. And Walker does not show a lack of impartiality. We affirm the denial of the DOSA.

Second, in light of State v. Ramirez[1] and the recent amendments to RCW 36.18.020(2)(h), RCW 2.30.030(5), and RCW 10.01.160(3), we remand for the superior court to strike the filing fee, deoxyribonucleic acid (DNA) fee, and drug court fee. But because RCW 7.68.035(1)(a) requires that the sentencing judge impose a victim penalty assessment on a defendant convicted of a crime, we affirm this fee.

Last, Walker cannot challenge the adequacy of the court's written findings and conclusions under CrR 6.1(d) for the first time on appeal where she makes no challenge to the sufficiency of the evidence to support her convictions.

We affirm in part and remand for the superior court to strike the relevant fees.

BACKGROUND

In December 2016, the State charged Walker with second degree possession of stolen property, theft of a motor vehicle, and two counts of second degree identity theft. On February 8, 2017, the superior court approved Walker's entry into drug court.

While she was in drug court, two of her urinalyses (UAs) tested positive for methamphetamine, she missed two group sessions and a doctor's appointment, she failed to appear for one UA, and she failed to appear in court on August 11, 2017. The drug court issued a bench warrant.

---

[1] 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

In early September, police arrested her on new charges for possession of drug paraphernalia and retail theft in the third degree. Later that month, the superior court terminated her from drug court "[g]iven [her] new criminal charges, [her] being on warrant status, basically a complete failure of drug court."

The superior court conducted a stipulated bench trial and found Walker guilty as charged and entered findings of facts and conclusions of law. Walker requested a DOSA. The Department of Corrections (DOC) conducted a screening and recommended against her receiving a DOSA.

At the sentencing hearing, the prosecution opposed a DOSA and recommended the court sentence Walker to the upper end of the standard range. Walker's counsel said that a DOSA by itself would "be the longest prison time she's ever done, by a great deal." Counsel asserted that the ongoing supervision under DOSA would make Walker less of a risk to the community than she would be if given the standard range sentence with less monitoring. Walker said she was sorry for giving up on herself and told the court that she was "not done fighting" her addiction. Walker's mother told the court that a DOSA would help Walker battle her serious addiction.

The court denied Walker's DOSA request and sentenced her to 57 months in prison and 12 months of community custody. It also ordered a chemical dependency evaluation and required her to follow any recommended treatment. It imposed a $500 victim penalty assessment, a $200 filing fee, a $100 DNA fee,

and a $900 drug court fee. It waived all other fines, fees, costs, and assessments.

Walker appeals.

## ANALYSIS

### Denial of Walker's DOSA Request

Walker asserts that the superior court did not exercise unbiased discretion when it denied her DOSA request. We disagree.

First, she contends that the trial court categorically denied her DOSA request. RCW 9.94A.660 authorizes a judge to order a reduced sentence, treatment, and supervision to an eligible nonviolent drug offender.[2] We generally do not review a decision whether to grant a DOSA.[3] But we may review the procedure the court used to reach its decision.[4] If a trial court categorically refuses to consider a statutorily authorized sentencing alternative, it abuses its discretion and commits reversible error.[5]

For example, in State v. Grayson,[6] the Washington Supreme Court reversed Grayson's sentence because the trial court denied him a DOSA

---

[2] State v. Grayson, 154 Wn.2d 333, 337, 111 P.3d 1183 (2005).

[3] Grayson, 154 Wn.2d at 338 (citing State v. Bramme, 115 Wn. App. 844, 850, 64 P.3d 60 (2003)); State v. Williams, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003).

[4] Williams, 149 Wn.2d at 147.

[5] Grayson, 154 Wn.2d at 342 (quoting State v. Garcia-Martinez, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997)).

[6] 154 Wn.2d 333, 342, 111 P.3d 1183 (2005).

"'mainly' because [the court] believed there was inadequate funding to support the program" and "did not articulate any other reasons for denying the DOSA."

Here, the trial court considered all of the evidence and arguments before it and addressed them on the record. These included DOC's recommendation against a DOSA, the prosecution's argument against a DOSA, Walker's counsel's argument for a DOSA, Walker's argument for a DOSA, and Walker's mother's e-mail and her statements to the court in support of a DOSA. The trial court, addressing Walker, described its reasons for denying her DOSA request:

> You've been using for a long time. We've got more than a dozen inpatient treatment programs for you, three here in this drug court, different modalities. . . .
>
> You've been on methadone. You've been on Suboxone. You've . . . attempted Vivitrol. The Vivitrol didn't work because— well, it actually did work because you used meth instead. You got around the Vivitrol, because Vivitrol is a heroin blocker, [an] opioid blocker, so you used meth . . . . I don't know what [you mean when you say], "I'm not going to stop fighting"; you stopped fighting a long time ago. You just have. You're fighting for your addiction. I don't see where a therapeutic setting will do you any good, because the therapeutic setting that we've had in these different modalities does not change your behavior.
>
> And so in the classic talk of recovery, clearly, bottom line is you haven't reached bottom. The consequences are not severe enough for you to make any changes. . . . There's no doubt in my mind that at times you truly do want to be clean and sober. I don't think there's any doubt in my mind about that, but you haven't, in any respect, given yourself any permission to be clean and sober. . . .
>
> And so my thought here is just [to] sentence you to the maximum amount that I can do, 57 months, and maybe during that period of time, the gravity of your addiction will maybe impress upon you that you need to change your behavior. Because you

have every tool at your disposal, you've been immersed in the recovery field. . . .

[Your mother] thinks there's another way to work with you. I don't know any other way to work with you, because when somebody won't work with themselves, there's no way for us to work with them. So until you're ready to forgive yourself, until you're ready to accept yourself, there's nothing left for you out here. I wish it was different, but it isn't.

So I'm going to deny the motion for a prison-based DOSA and sentence you to the terms [that] you contracted in for.

Contrary to Walker's claim, the superior court considered far more than simply Walker's termination from drug court. It did not categorically deny her the DOSA.

Second, Walker contends that the judge exhibited unfairness and bias toward her during the hearing accepting her into drug court and at the sentencing hearing. For this reason, she asks this court to reverse and remand for resentencing before a different judge. The State contends that Walker cannot raise this issue on appeal because she did not raise it in the trial court. It also contends that the trial judge did show or appear to show unfairness or bias toward Walker.

Generally, a party may raise on appeal only those issues raised at the trial court.[7] But an appellant may raise an issue for the first time on appeal if it involves a manifest error affecting a constitutional right.[8] This test, however, requires a trial court error. This court must preview the merits of the claimed

---

[7] RAP 2.5(a).
[8] RAP 2.5(a).

constitutional violation to determine whether the argument is likely to succeed.[9] Only if an error did occur does this court address whether the error caused actual prejudice and was therefore manifest.[10]

The federal and state constitutions each guarantee a criminal defendant the right to an impartial court for trial and sentencing proceedings.[11] Under "the appearance of fairness doctrine, a judicial proceeding is valid if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing."[12]

Drug court is therapeutic court, where a judge has statutory authority to work "in ways that depart from traditional judicial processes to allow defendants or respondents the opportunity to obtain treatment services to address particular issues that may have contributed to the conduct that led to their arrest."[13]

Walker relies on comments the trial judge made in February 2017 in an exchange with Walker before accepting her into drug court and at the sentencing hearing. At the February 2017 hearing, the judge spoke strongly to Walker and to the other participants. Early in the proceeding, he asked Walker why she used drugs every day.

---

[9] In re Det. of Brown, 154 Wn. App. 116, 121-22, 225 P.3d 1028 (2010).
[10] State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007).
[11] U.S. CONST. amends. VI, XIV; WASH. CONST. art. I § 22; State v. Solis-Diaz, 187 Wn.2d 535, 539-40, 387 P.3d 703 (2017).
[12] Solis-Diaz, 187 Wn.2d at 540 (citing State v. Gamble, 168 Wn.2d 161, 187, 225 P.3d 973 (2010)).
[13] RCW 2.30.030(1).

MS. WALKER: I believe I'm an addict. I know I can't use. I still use.

THE COURT: Why? Because I'm an addict? It's a circular argument. It's a cop-out. Uncomfortable now?

MS. WALKER: No, I'm not uncomfortable.

THE COURT: I haven't even begun yet.

MS. WALKER: I just don't have the answers yet. Hopefully I'll figure it out.

THE COURT: Would it blow your mind if I told you you did?

MS. WALKER: I mean.

THE COURT: You all do already.

Later, the judge asked Walker again why she used, and they had the following exchange:

MS. WALKER: To hide my feelings . . ., I guess.

THE COURT: So you agree that you want to feel different. That's why you use, because you don't like the way you feel when you're not using. Right?

MS. WALKER: My feelings.

THE COURT: Everybody with me? Not with me?

MS. WALKER: No, I mean, I am to a certain extent, but . . . .

THE COURT: What extent?

MS. WALKER: Well, I mean, I don't really use to like—well, I mean, I'm sure I do. But I mean, I do it more because the lifestyle and using is—

THE COURT: Bullshit.

MS. WALKER: —all I know.

THE COURT: Bullshit.

MS. WALKER: It's uncomfortable for me to be clean.

THE COURT: Right. It has nothing to do with the lifestyle. These are all little excuses you're making yourself so you don't really deal with the real issue. Lifestyle. Your lifestyle's good. Your lifestyle landed you talking in front of me in a court of law on a Wednesday afternoon on February the 8, 2017.

What [is it] about that lifestyle that's so appealing?

MS. WALKER: I didn't say anything was appealing about it.

THE COURT: Lifestyle.

MS. WALKER: I said it's all I know. I don't have like any silver memories of myself. So to be sober—

THE COURT: That's cool.

MS. WALKER: —is very uncomfortable.

THE COURT: Why?

MS. WALKER: Because I don't know how to.

THE COURT: Just quit using. I got you kind of sidetracked on that one. So I started with the proposition that we use. Now you're telling me you're closing me off now. That's the international body language sign. So we start with the proposition that we use to make ourselves feel better or different, to change our perception, to have a different reality because we don't like what it was before we used.

We don't like our reality when we're not using or we don't like our—ourselves when we're not using. I know this, because nobody in their right mind would continue to use if it made them feel worse. That just doesn't happen. It's like hitting yourself over the head with a hammer. So you must like something of it, and if you're honest about it, you like not thinking.

So logically, it follows, we don't like where we're at when we're not using. We don't like who we are. We don't like our reality. We don't like the feelings we have when we're not using. And there's the answer. What is it here that we don't like about ourselves?

What's the malfunction? What's the hurt? What's the injury? What's the anger? What's the upset? What is it here that keeps that voice going, the little voice that we hear that says we're no good and if people really knew who we were, they'd want nothing to do with us, a voice that says we don't deserve to be happy, we don't deserve success.

That voice here that says we don't deserve to be clean and sober. We're pieces of shit, and if anybody really knew who we were, they'd hate us as we hate ourselves.

Where is that voice coming from, that's the question. Why do you use? To shut the voice up. Am I right? Or am I right? You['ve] got to answer the question. Where is the voice coming from? Answer the question, you'll be free. You don't answer the question, we're just playing games.

You have to drill down here. It's not about not using. Hell. About 10 years from now your brains are going to explode and you're going to say it had nothing to do with drugs. My addiction has nothing to do with drugs. This has everything to do with in here and this malfunction. It doesn't make any sense any other way.

You got to ask the question. You got to have the courage to do it. Is it hard? Hardest thing you'll ever do in your lives. Hardest thing you'll ever do in your lives is to have that conversation and get right by yourselves. There's no other way, though. There's no other path.

I don't believe in relapses. I just believe that you haven't answered the question sufficiently, that you hadn't given it a full and honest examination, that you haven't drilled down to find out who you are.

When did you start using?

MS. WALKER: When I was 13.

THE COURT: Thirteen. You have no idea who you are, which is kind of sad. But it's kind of cool in the sense that now you can define who you want to be. They say that until your brains are fully developed at the age of 25, if you dump a bunch of mood into the mind-altering substances on top of it, it stops the natural growth and progression.

So I got a 20—13-year-old in a 27-year-old body over here, who's trying to search and find out who she is, but the beauty of it is you can write your own damn story if you have the courage to do so.

That's what I do here, that's my function, is to make sure you're engaging in that type of discovery. Anybody can sit here and be like a probation officer, but I don't want to do that. I don't care about that. I don't care about your UAs. I don't care about your—I don't care. What I care about is are you doing the work necessary inside to make a goddamn difference. That's what I care about.

At the final sentencing hearing, the judge responded to Walker's statement that she "was not done fighting" with the statement quoted earlier in this opinion.

Later, when he sentenced her, he said, "[U]ntil you're ready to forgive yourself, until you're ready to accept yourself, there's nothing left for you out here. I wish it was different, but it isn't."

Walker pulls phrases from the exchanges, such as, "I don't believe in relapses," "Uncomfortable now?," and "you stopped fighting long ago." But when considered in the context of the entire February 2017 exchange and the complete sentencing hearing, these phrases do not establish bias. For example, Walker contends the judge called her a liar. At the initial hearing, the judge did question her honesty when he commented, "Bullshit," after she said the lifestyle was all she really knew. But then she revealed that it was "uncomfortable" for her "to be clean," and the judge responded, "Right." Although a judge should not use profanity, this exchange does not establish bias. Rather, it shows the judge's intent to engage Walker in the therapeutic process of addressing her

-11-

addiction. During that same proceeding, he also welcomed her to drug court, spoke of her inherent capacity to do the needed work, and displayed no indication that he anticipated she would fail in the program.

An exchange between Walker and the trial judge at a May 2017 hearing illustrates the judge's attitude toward Walker. Walker appeared because she had not attended a UA test. She was also late to the hearing. After the judge imposed sanctions for this misconduct, the following exchange occurred:

> THE COURT: Anything you need from me?
>
> MS. WALKER: No. Just keep pushing me.
>
> THE COURT: Okay. I can do that.
>
> MS. WALKER: (Unintelligible) I'll get in trouble.
>
> THE COURT: Are you sure?
>
> MS. WALKER: Yeah.
>
> The COURT: All right. Thanks for coming back. Thanks for allowing me to talk with you. I'll see you next week. You stay until the end of the calendar.

The court then asked those present to applaud Walker, presumably because she had been clean and sober for 55 days.

Walker cites State v. Lemke,[14] in which the same superior court judge did not appear reasonably impartial toward a participant in drug court. During those proceedings, the judge called Lemke a "fucking addict" and "just a criminal."[15]

---

[14] 7 Wn. App. 2d 23, 27-28, 434 P.3d 551 (2018).
[15] Lemke, 7 Wn. App. 2d at 25, 27.

-12-

He told Lemke, "You can't even give me a clean date you're so fucked up"[16] and said, "So not only is he an addict, he's also a liar and thief."[17]  After Lemke's attorney requested a DOSA, the judge said, "I'm not giving him a residential DOSA."[18]

The judge's treatment of Walker does not compare to his treatment of Lemke.  He did not call Walker a thief or a criminal.  Instead, he pushed her to explore the cause of her drug use and told her she had the capacity to address her addiction.  He considered the results of the DOC's screening and the statements by the parties and their witnesses.  We conclude that Walker fails to establish that a reasonable person might question the impartiality of the superior court judge.  So she does not establish manifest constitutional error entitling her to raise this issue for the first time on appeal.

Legal Financial Obligations

Next, Walker asserts that the trial court erred in imposing four LFOs because the 2018 amendments to LFO-related statutes enacted under House Bill 1783 retroactively apply to her.  We agree that three of the four fees she challenges must be stricken.

*A. Mandatory Victim Penalty Assessment*

Walker challenges the court's imposition of the $500 victim penalty assessment.  RCW 7.68.035(1)(a) requires that a trial court impose a penalty

---

[16] Lemke, 7 Wn. App. 2d at 26.
[17] Lemke, 7 Wn. App. 2d at 26.
[18] Lemke, 7 Wn. App. 2d at 26.

assessment on "any person . . . found guilty in any superior court of having committed a crime," except for crimes identified in RCW 7.68.035(2). These assessments fund programs for victims and witnesses.[19] The statutory amendments passed in 2018 retain the fee as mandatory.[20] The court did not err in imposing the victim penalty assessment.

*B. Discretionary Fees*

Walker challenges the $200 filing fee, the $100 DNA fee, and the $900 drug court fee on the grounds that the legislature's 2018 modifications to LFO statutes apply to her sentence.

In 2015, the Washington Supreme Court held that under RCW 10.01.160(3), sentencing judges must "make an individualized inquiry into the defendant's current and future ability to pay before the court imposes LFOs."[21] Subsequently, in 2018, the legislature passed House Bill 1783 which amended statutes governing the imposition of discretionary LFOs. House Bill 1783, effective June 7, 2018, amended former RCW 36.18.020(2)(h) (2015) to prohibit trial courts from imposing the $200 court filing fee on indigent defendants.[22] It also eliminated the mandatory $100 DNA collection fee where "the state has previously collected the offender's DNA as a result of a prior conviction."[23] It did

---

[19] RCW 7.68.035(4).

[20] LAWS OF 2018, ch. 269 § 19; State v. Catling, 193 Wn.2d 252, 259-60, 438 P.3d 1174 (2019) (noting that House Bill 1783 "specifically and repeatedly" identifies the assessment fee as mandatory).

[21] State v. Blazina, 182 Wn.2d 827, 839, 344 P.3d 680 (2015).

[22] LAWS OF 2018, ch. 269, § 6(3).

[23] RCW 43.43.7541.

not directly affect RCW 2.30.030(5) which confers on the superior court the discretion to reduce or waive fees for therapeutic courts "[u]pon a showing of indigence under RCW 10.101.010." But it amended RCW 10.01.160(3) to prohibit sentencing courts from imposing discretionary costs on indigent defendants.[24] Under Ramirez, these amendments apply prospectively to Walker because her direct appeal was pending at the time of the amendment's enactment.[25]

The superior court did not make an inquiry into Walker's ability to pay before it imposed the LFOs at issue. And Walker demonstrated her indigency for this appeal.[26] Walker was convicted of several felonies in 2014, and the prosecution's record of her criminal history stated that the State had previously collected her DNA. And the judgment and sentence in this case states that DNA testing was not required because the Washington State Patrol Crime Laboratory already had a sample.[27]

---

[24] LAWS OF 2018, ch. 269, § 17(2)(h).

[25] Ramirez, 191 Wn.2d at 747. The State's response focuses largely on the cost of drug court and declares that "[i]f fees could not be imposed against indigent participants, they could rarely be imposed at all [in drug court]." This argument ignores Ramirez and Blazina. As the court in Blazina noted, "[T]he State cannot collect money from defendants who cannot pay." Blazina, 182 Wn.2d at 837.

[26] Ramirez similarly demonstrated his indigence at the appeal stage. Ramirez, 191 Wn.2d at 747.

[27] The State asserts, "In the present case, the record does not show whether or not the defendant previously submitted a DNA sample." But it fails to address the documents in the record asserting that she did previously submit a sample. And, if these are insufficient, it fails to identify what, exactly, is sufficient to show DNA was previously collected.

The State concedes that the $200 filing fee should be stricken. We agree and remand for that purpose. Because the record shows that the State has already collected Walker's DNA, we also remand for the superior court to strike the $100 DNA collection fee.[28] Finally, because the drug court fee is discretionary and the 2018 amendment to RCW 10.01.160(3) prohibits sentencing courts from imposing discretionary costs on indigent defendants, we remand for the superior court to strike the $900 drug court fee.

<u>Findings of Fact and Conclusions of Law</u>

Last, Walker challenges, under CrR 6.1(d), the adequacy of the trial court's findings of fact and conclusions of law entered with her convictions. She claims they were insufficient because "they reiterated the charging document and added no information about the factual basis for each crime." Walker does not challenge the sufficiency of the evidence to support her convictions. She does not claim that the findings fail to address any element of a crime for which the court convicted her. Nor does she claim that the trial court failed to find any element of any crime proved beyond a reasonable doubt.

In response, the State contends that Walker cannot raise this issue because she did not object to the adequacy of the findings and conclusions in the trial court. We agree.

---

[28] The State cites to <u>State v. Thibodeaux</u>, 6 Wn. App. 2d 223, 230, 430 P.3d 700 (2018), <u>review denied</u>, 192 Wn.2d 1029 (2019). It states that here, as in <u>Thibodeaux</u>, the record is silent as to whether Walker's DNA was collected. But the record here is not silent.

As we have noted, a party generally may not raise an issue for the first time on appeal. Unlike Walker's claim of judicial bias, this claim does not raise any constitutional issue. Nor does she assert that any other exception to the general rule applies. Indeed, Walker does not respond in her reply brief to the State's argument. We exercise our discretion under RAP 2.5 and decline to consider the issue.

## CONCLUSION

We affirm in part and remand for the superior court to strike the criminal filing fee, the DNA collection fee, and the drug court fee from the judgment and sentence.

Leach, J.

WE CONCUR: